# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:13-CV-03452-MSK-BNB

GREEN EARTH WELLNESS CENTER LLC

      Plaintiff,

v.

ATAIN SPECIALTY INSURANCE COMPANY

      Defendant.

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Defendant Atain Specialty Insurance Company ("Atain"), through its attorneys, Pryor Johnson Carney Karr Nixon, PC, moves this Court to enter summary judgment in its favor, pursuant to Fed. R. Civ. P. 56.[1] As grounds therefore, Atain states as follows:

### CERTIFICATE OF CONFERRAL PURSUANT TO D.C.COLO.CIV.R 7.1(A)

Undersigned counsel discussed the grounds for this motion and the relief requested with counsel for the Plaintiff. Plaintiff opposes the relief requested herein.

## I.     INTRODUCTION

Green Earth Wellness Center, LLC ("Green Earth"), filed this action against Atain, alleging that Atain breached the terms of the insurance policy it issued to Plaintiff, Policy No. CIP143321, with an effective policy period of June 29, 2012 to June 29, 2013 (the "Policy").

---

[1] Atain acknowledges that this Court generally does not favor motions for partial summary judgment, but submits that if the Court grants partial summary judgment on any of the issues addressed, the scope of evidence to be presented at trial will be significantly reduced and a ruling on these issues will assist the parties in better evaluating a possible resolution. MSK Civ. Practice Standards, V.I.3.3.b.

Plaintiff also alleges breach of the implied covenant of good faith and fair dealing (second listed claim for relief) and violation of C.R.S. §§ 10-3-1115 and 1116 (third listed claim for relief), regarding Atain's handling of its claims. First, Atain requests summary judgment on Plaintiff's second and third causes of action relating to alleged bad faith. Second, Atain requests summary judgment in its favor regarding several categories of losses claimed by Plaintiff and which are precluded from coverage by application of the Growing Crops Exclusion and the Theft Exclusion.

## II.    FACTUAL BACKGROUND

The parties have stipulated to certain facts and as to the authenticity of certain relevant documents. For a full recitation of these facts, and discussion of the relevant documents, see the Stipulation of Facts and Documents, Doc. No. 71 ("Stipulation"). In sum, and of particular relevance to this Motion, Plaintiff is a medical marijuana business with two business locations, one for growing marijuana plants and one for dispensing medical marijuana products. Stipulation, ¶¶ 1 and 2. Atain issued the Policy, a business property insurance policy, effective June 29, 2012 to June 29, 2013 to Plaintiff. Stipulation, ¶ 10. This case now concerns two separate occurrences and claims submitted against the Policy: the 2012 Waldo Canyon fire and a theft at Plaintiff's facilities on June 7, 2013. For various reasons, Atain found no coverage to be owing for either of the two claims.

### Negotiation and Issuance of the Policy

Stroup Insurance Services, Inc. ("Stroup") is Plaintiff's agent, authorized to act on behalf of Plaintiff. Stipulation, ¶ 4. Stroup submitted a Commercial Insurance Application to Atain's managing general agency, Burns & Wilcox, Ltd. ("Burns & Wilcox") on or around April 12,

2

2012. Stipulation, ¶ 5. On April 23, 2012, Burns & Wilcox submitted an insurance quotation to Stroup for a potential insurance policy to be issued to Plaintiff. The quotation states that "[c]overage does not extend to growing or standing plants." Stipulation, ¶ 7. On June 29, 2012, in the midst of the Waldo Canyon fire, and presumably after reviewing the quotation with its client, Stroup instructed Burns & Wilcox to bind the policy that had been quoted. On the same day, Atain, through Burns & Wilcox, submitted an insurance binder to Stroup for the insurance policy to be issued to Green Earth. The insurance binder, like the quotation, states that "[c]overage does not extend to growing or standing plants." Stipulation, ¶ 9. The Policy accordingly became effective on June 29, 2012. Stipulation, ¶ 10; *see generally* Stipulation, ¶¶ 4-12 regarding negotiation of the insurance policy.

**The Waldo Canyon Fire Claim**

Plaintiff's first claim involves the Waldo Canyon fire. For stipulations regarding the Waldo Canyon fire, see Doc. No. 71, ¶¶ 13-40. As this Court may recall, the Waldo Canyon fire broke out on June 23, 2012, which was six days prior to the inception of the Policy. As background, the Waldo Canyon fire quickly spread, growing to over 15,000 acres by June 26, 2012, an important date to keep in mind regarding this claim. The fire continued to burn for the next several days. By July 1, 2012, the fire was 55% contained and evacuation orders for a majority of the evacuees were lifted. On July 10, 2012, the fire was declared 100% contained. For illustrative purposes only, *see* **Exhibit A**, Waldo Canyon Fire Timeline.

Of importance to this claim, the Policy provides:

**COMMERCIAL PROPERTY CONDITIONS**

This Coverage Part is subject to the following conditions, the

3

Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

### H.   POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage *commencing*:
    a.   During the policy period shown in the Declarations; and
    b.   Within the coverage territory.

2. The coverage territory is:
    a.   The United States of America (including its territories and possessions);
    b.   Puerto Rico; and
    c.   Canada.

Stipulation, ¶ 10, CP 00 90 07 88 (emphasis added).

On November 21, 2012, nearly five months after the Waldo Canyon fire started, David Frederick, with CRI Services, a public adjusting firm acting as Plaintiff's agent, submitted a claim on behalf of the Plaintiff for damages arising out of the fire (the "Waldo Canyon Fire Claim"). Initially it should be noted that Mr. Frederick listed Plaintiff's date of loss for the Waldo Canyon Fire Claim as June 26, 2012, three days before the Policy incepted. Stipulation, ¶ 15. Within five days of receiving the claim with the date of loss noted as June 26, 2012, Mr. Trombley, on behalf of Atain, wrote back to Mr. Frederick, indicating that the date of loss fell outside the policy period. *Id.* It was ten days later, on December 6, 2012, that Mr. Dufour of CRI Services responded to Mr. Trombley, asking how to calculate a date of loss. Stipulation, ¶ 17. That same day, and in all fairness to Plaintiff, Atain agreed to open up a claim file and investigate the loss.

The very next day, on December 7, 2012, Atain retained an independent adjuster, Mr. Scott Boyd of NHI General Adjusters. Stipulation, ¶ 18, Boyd Reports 1-4, p. 1; **Exhibit B**, January 16, 2015 Affidavit of Scott Boyd, ¶ 2. Mr. Boyd immediately contacted Plaintiff's public adjuster, Mr. Tom Dufour, to discuss the claim and to set up an inspection of Plaintiff's facilities. *Id.* Mr. Dufour could not meet before December 18, 2012, and so December 18, 2012 was picked as the date that Mr. Boyd would visit Plaintiff's facilities to conduct an investigation. Stipulation, ¶ 20. At the December 18, 2012 inspection, Mr. Boyd hand-delivered a reservation of rights letter to Mr. Dufour, identifying the reasons why coverage may be precluded under the Policy and specifically stating that coverage may be denied for losses first commencing prior to the inception of the Policy. Stipulation, ¶ 21. At all relevant times, Mr. Dufour acted as the public adjuster for Plaintiff and was Plaintiff's agent. Stipulation, ¶ 20; **Exhibit B**, January 16, 2015 Affidavit of Scott Boyd, ¶ 4. Per his reports, Boyd "conducted research via the U.S. Forestry Department and local news agencies which have presented a timeline," which he reported did "not appear to correspond with [Plaintiff's] stated date of loss." Boyd also noted "we have continued our attempts to secure documentation from the Environmental Protection Agency and the Colorado Forestry Department that provides written confirmation of the smoke and ash content over the insured location…" Stipulation, ¶ 19; Boyd Reports 1-4 at Atain_000018.

On January 2, 2013, Mr. Dufour submitted to Atain the first estimate for damage to Plaintiff's facilities caused by the smoke and debris from the Waldo Canyon fire, and once again identified the date of loss as June 26, 2012. Stipulation, ¶ 27, Dufour Email of January 2, 2013 and Cover Page from attached CRI Estimate. It was not until over seven months after the Waldo

Canyon fire broke out and nearly three months after Green Earth first submitted its claim, that Mr. Dufour emailed Mr. Trombley, indicating for the first time that the date of loss was July 1, 2012 and not June 26, 2012. Stipulation, ¶ 28, Dufour Email of February 7, 2013. Based on this updated information, Atain expanded its investigation. Specifically, Atain, through its independent adjuster, Mr. Boyd, investigated relevant dates of burn for the Waldo Canyon fire. Mr. Boyd's investigation continued from December 7, 2012 through at least April, 2013. Stipulation, ¶ 19, Boyd Reports 1-4.

By letter dated April 5, 2013 to Mr. Trombley of Atain, Mr. Dufour stated that Plaintiff had established the date of loss as July 1, 2012, and that he believed Atain was "unreasonably delaying" its review of Plaintiff's claim. Stipulation, ¶ 29, Dufour Letter of April 5, 2013. However, it was not until April 17, 2013, that Plaintiff provided its first Proof of Loss report, along with an overview of Plaintiff's operation and a recollection of the Waldo Canyon fire's effects on Green Earth. Stipulation, ¶ 30, Proof of Loss for 519 Address. The very next day, on April 18, 2013, counsel retained by Atain contacted Mr. Dufour to request the examination under oath of Mr. Justin Flowers, the then-owner of Green Earth. Stipulation, ¶ 31, Ogburn Letter of April 18, 2013. The examination took place on May 23, 2013 in Colorado Springs, to accommodate everyone's schedules and to provide Mr. Flowers the opportunity to prepare for the examination. During his examination, Mr. Flowers took the position that Plaintiff sustained damages on or after July 1, 2012, two days after the Policy incepted and eight days after the Waldo Canyon fire started. However, Mr. Flowers also testified that he was the only one who observed the condition of the shop on either June 27 or 28, 2012, the days before the Policy incepted. Stipulation, ¶ 32; **Exhibit C**, Flowers Examination Under Oath, p. 68. Also during the

examination, Ms. Ogburn requested several documents from Mr. Flowers in support of Plaintiff's claim. *Id.*, pp. 17, 82, 100. On June 20, 2013, nearly one month after the examination, Ms. Ogburn still had not received the requested documentation and followed up with Mr. Flowers and Mr. Dufour to request the documents mentioned during Mr. Flower's examination under oath. Stipulation, ¶ 33, Ogburn Letter of June 21, 2013.

It was also on June 20, 2013 that Atain retained Mr. Schmitt, a senior investigator and wildland fire expert at Phoenix Engineering & Investigations, to investigate the date of loss. Mr. Schmitt reviewed various correspondence and reports from Mr. Flowers, Mr. Trombley, and Mr. Boyd, weather data, and various recounts of the Waldo Canyon fire. Stipulation, ¶ 34, Phoenix Investigation Report.   On July 15, 2013, Phoenix issued its report, finding that fire damage occurred prior to the inception of the Policy. *Id.* In his report, Mr. Schmitt reported to Atain that based on weather data and the location of the fire, the Waldo Canyon fire would have impacted Plaintiff on the evening of June 23, 2012, the evening of June 24, 2012, from noon on June 26, 2012 through noon on June 27, 2012, and during the afternoon of June 29, 2012. *Id.* In the end, Mr. Schmitt concluded that damage to Plaintiff's facilities and ventilation system must have occurred prior to July 1, 2012, Plaintiff's claimed date of loss. In fact, Mr. Schmitt opined that the damages first commenced prior to the inception of the Policy. Stipulation, ¶ 34, Phoenix Investigation Report.   Two weeks later, on July 29, 2013, Atain denied coverage for the Waldo Canyon Fire Claim, concluding based on the totality of the information gathered that the damages first commenced prior to the inception of the Policy, among other reasons, and fully reserving its right to rely on any other policy provisions not specifically cited. Stipulation, ¶ 36,

Ogburn Letter of July 29, 2013. Nearly five months later, without ever responding to the denial letter, Plaintiff brought this lawsuit against Atain. Stipulation, ¶38.

### The March 23, 2013 Theft Claim

Plaintiff has withdrawn its claims related to the March 23, 2013 theft. Stipulation, ¶ 41.

### The June 7, 2013 Theft Claim

On June 7, 2013, thieves burglarized Green Earth's grow facility, the 505 location, by entering the facility through the ventilation system on the roof. For stipulations regarding the June 7, 2013 theft, see Doc. No. 71, ¶¶ 42-53. Officers with the Colorado Springs Police Department investigated the theft, and stated in their report that the thieves vandalized the premises and stole a large number of potted marijuana plants. Stipulation, ¶ 47.

Upon receipt of this claim, Atain retained AmeriClaim of Southern Colorado to investigate. After an inspection of Plaintiff's facility and review of the Policy, Atain determined that covered damages amounted to $2,337.81. Stipulation, ¶ 50. Because this figure falls below Plaintiff's deductible of $2,500.00, Atain determined that payment was not owing for this claim. However, Atain did not deny the claim. Atain conveyed this determination to Plaintiff by letter dated September 13, 2013. Stipulation, ¶ 51, Horn Letter of September 13, 2013. Plaintiff never responded to Atain's determination as to the value of the claim or requested an appraisal pursuant to the Policy before filing this lawsuit. Stipulation, ¶ 52.

### Plaintiff's Claimed Losses

In its Fed. R. Civ. P. 26(a)(1) Supplemental Disclosures, Plaintiff lists its computation of damages as follows:

505 Smoke/Structure $ 46,432.32

519 Smoke/Structure $ 15,759.51
505 Burglary/Structure $ 7,933.85
Total Stock $275,175.37
Less Deductible <$ 2,500.00>
Less Prior Payments <$ 0.00>
----------------------------------------------------------------------------
Policy Proceeds $342,801.05

**Exhibit D**.

The line items labeled "Smoke/Structure" relate to Green Earth's claimed damages to the building and tenant improvements as caused by the Waldo Canyon fire. Stipulation, ¶ 55. The line item labeled, "Burglary/Structure" pertains to the damage to the building and tenant improvements as caused by the June 7, 2013 theft. For stipulations regarding this lawsuit and Plaintiff's alleged losses, see Doc. No. 71, ¶¶ 54-70. The Policy provides coverage for damages in excess of the Policy's deductible of $2,500 for tenant improvements and betterments that have been made a part of the building Green Earth occupies. Stipulation, ¶ 10; Policy. However, the Policy also includes a Theft Exclusion, precluding coverage for any damages caused by a theft. The Theft Exclusion contains two exceptions, one of which reinstates coverage for damage caused by burglars entering or exiting the premises. Stipulation, ¶ 10; Policy.

The line item "Total Stock" relates to Green Earth's damages to its marijuana and its marijuana products as caused by the Waldo Canyon fire. As part of the Stipulation, Plaintiff has admitted:

1.      Green Earth alleges damages in the amount of $118,478.59 for permanently damaged mother plants as a result of the Waldo Canyon Fire. Stipulation ¶, 58.

Atain contends that this amount is not covered by the Policy because the Policy excludes coverage for "growing crops," which includes damage to Green Earth's potted marijuana plants.

Atain asks this Court to enter judgment in its favor on this claimed loss.

2.      Green Earth alleges damages in the amount of $25,573.78 for damaged (but still viable) mother plants as a result of the Waldo Canyon Fire. Stipulation ¶, 59.

Atain contends that this amount is not covered by the Policy because the Policy excludes coverage for "growing crops," which includes damage to Green Earth's potted marijuana plants. Atain asks this Court to enter judgment in its favor on this claimed loss.

3.      Green Earth alleges damages to 165 flower plants in the amount of $86,120.00 as a result of the Waldo Canyon Fire. Stipulation ¶, 60.

Atain contends that this amount is not covered by the Policy because the Policy excludes coverage for "growing crops," which includes damage to Green Earth's potted marijuana plants. Atain asks this Court to enter judgment in its favor on this claimed loss.

4.      Green Earth alleges damages to 165 veg plants in the amount of $2,475.00 as a result of the Waldo Canyon Fire. Stipulation ¶, 61.

Atain contends that this amount is not covered by the Policy because the Policy excludes coverage for "growing crops," which includes damage to Green Earth's potted marijuana plants. Atain asks this Court to enter judgment in its favor on this claimed loss.

5.      Green Earth alleges damages to 165 clones in the amount of $3,000.00 as a result of the Waldo Canyon Fire. Stipulation ¶, 62.

Atain contends that this amount is not covered by the Policy because the Policy excludes coverage for "growing crops," which includes damage to Green Earth's potted marijuana plants. Atain asks this Court to enter judgment in its favor on this claimed loss.

6.      Green Earth alleges damages to 9 lbs. of unusable harvest, in the amount of

$39,528.00 as a result of the Waldo Canyon Fire. Stipulation ¶, 65.

Atain does not request judgment on this claimed loss.

As relevant to Atain's analysis, Plaintiff has stipulated:

7.     The mother plants, flower plants, veg plants, and clones for which Green Earth alleges damages were potted plants at the time of the damage. Stipulation ¶, 64.

8.     The unusable harvest for which Green Earth alleges damages was flowers harvested and cut from the potted clone plants, which was then dried, no longer growing, and was preparing to be sold. Stipulation ¶, 66.

9.     Green Earth is not claiming as a covered loss any damages sustained to its marijuana resulting from the June 2013 burglary. Stipulation ¶, 69.

## III.   PROCEDURAL POSTURE

On December 20, 2013, Plaintiff filed the present lawsuit, alleging that Atain should have paid it for its losses discussed above, and that Atain wrongfully withheld payment on those claims. *See* Complaint, filed Dec. 20, 2013, Doc. No. 1, ¶ 11. Plaintiff asserts causes of action for breach of the insurance contract; breach of the implied covenant of good faith and fair dealing; and statutory violations of C.R.S. §§ 10-3-1115 and 1116. *Id.* at ¶¶ 12-24.

For its breach of implied covenant of good faith and fair dealing claim, Plaintiff merely pleads that:

> Atain Specialty has violated its duty of good faith and fair dealing by, among other things, failing to offer to pay the Plaintiff an amount which it otherwise concluded to be a fair and reasonable amount for its losses and by compelling Plaintiff to institute litigation to recover amounts due under the agreement of insurance with Atain Specialty. *Id.* at ¶ 17.

For its statutory bad faith claim, Plaintiff states, "Atain Specialty has unreasonably denied or delayed payment to Plaintiff…" *Id.* at ¶ 23.

The parties dispute the legal issues of whether Atain breached the Policy by denying coverage for the claimed losses and whether Atain acted in bad faith in investigating and refusing payment for Plaintiff's claims. However, the parties do not dispute any material facts that would preclude entry of judgment on the issues presented in this Motion. In fact, the parties have reached an agreement as to a vast and significant number of facts giving rise to this lawsuit. *See generally*, Stipulation, Doc. No. 71. The Court's remaining determination as to whether certain types of losses are covered under the Policy requires this Court to interpret the Policy, which is a legal issue that is properly determined by this Court. *See Colorado Pool Systems, Inc. v. Scottsdale Ins. Co.*, 317 P.3d 1262, 1271 (Colo. Ct. App. 2012); *see also Compass Ins. Co. v. City of Littleton,* 984 P.2d 606, 613 (Colo. 1999) ("The interpretation of an insurance contract is a matter of law which we review de novo."); *Continental Western Ins. Co. v. Shay Const., Inc.*, 805 F.Supp.2d 1125, 1129-1133 (D. Colo. 2011).

In addition, this Court may decide whether Atain acted in bad faith as pled in Plaintiff's second and third causes of action. *Zolman v. Pinnacol Asur.,* 261 P.3d 490, 497 (Colo. Ct. App. 2012) ("What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury. However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law."); *see also Bannister v. State Farm Mut. Auto Ins. Co.,* 692 F.3d 1117, 1127-28 (10th Cir. 2012) (awarding judgment as a matter of law to insurer and stating that: "if the evidence at trial demonstrates that there was a legitimate dispute as to coverage under the policy, and that the insurer's position was reasonable

in light of the facts known or knowable to it at the time it denied the claim, then as a matter of

law the insurer did not breach the duty of good faith merely by refusing to pay the claim. Rather,

the claimant must produce additional evidence of bad faith in order to send the issue to the jury.

(internal quotations omitted)"). Accordingly, Atain requests summary judgment be entered in its

favor concerning the statutory and common law bad faith claims. Atain further requests summary

judgment be entered in its favor on Plaintiff's claimed losses to its potted marijuana plants

identified above (which losses total $235,647.37); and damages to the building and tenant

improvements caused during the June 7, 2013 theft (which losses total $7,933.85).

## IV.   ARGUMENT

### A.   CLAIMS AND DEFENSES UPON WHICH JUDGMENT IS SOUGHT

**1. Atain is Entitled to Summary Judgment on Plaintiff's Second Cause of Action: Breach of the Implied Covenant of Good Faith and Fair Dealing.**

a.   Burden of Proof and Elements

In order to prevail on its claim for breach of the implied covenant of good faith and fair

dealing, Plaintiff must prove that (1) Atain engaged in unreasonable conduct with regard to the

parties' insurance relationship; (2) Atain either knew of the unreasonableness of its conduct or

acted with reckless disregard of such unreasonableness; and (3) Plaintiff was injured as a result.

*Johnson v. Liberty Mut. Fire Ins. Co.*, 653 F.Supp. 2d 1133 (D. Colo. 2009) (citing *McKelvy v.*

*Liberty Mut. Ins. Co.*, 983 P.2d 42, 44 (Colo. App. 1998); *Ballow v. PHICO Ins. Co.*, 875 P.2d

1354, 1363 (Colo. 1993)); *see also Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1217

(Colo. App. 2010) (citing *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414 (Colo. 2004)).

For purposes of the first element, whether an insurer's conduct is reasonable must be

determined objectively. *Sanderson*, 251 P.3d at 1217; *Travelers Ins. Co. v. Savio*, 706 P.2d 1258,

13

1274 (Colo. 1985); *Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo. App. 2008). As stated in *Sanderson*, "if a reasonable person would find that the insurers' justification for denying payment of a claim was 'fairly debatable' (i.e., if reasonable minds could disagree as to the coverage-determining facts or law), then this weighs against a finding that the insurer acted unreasonably." *Sanderson*, 251 P.3d at 127 (citing *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005)). The fact that an insurer's belief as to coverage turns out to be incorrect does not alone give rise to a claim for bad faith. *Id.* Expert testimony on insurance industry standards is often required to establish the standard of reasonableness under the particular circumstances. *See Morris*, 192 P.3d at 524 (citing *Goodson*, 89 P.3d at 415).

The scienter requirement for the second element is satisfied where the insurer acts unreasonably "with knowledge of facts that indicate that its conduct lacks a reasonable basis" or when it is "deliberately indifferent to information concerning" the issue. *Johnson*, 653 F.Supp.2d at 1145 (citing CJI 4th 25:5). When conflicting evidence exists, what constitutes reasonableness under the circumstances is normally a question of fact for the jury. *Morris*, 192 P.3d at 524. However, where there are no genuine issues of material fact, reasonableness may be decided as a matter of law on summary judgment. *Id.* (citing *Lego v. Schmidt*, 805 P.2d 1119, 1124 (Colo. App. 1990)). Here, there are no disputes as to any material facts and, thus, Atain asks this Court to enter judgment in its favor on Plaintiff's second claim.

     b.   <u>Elements that Cannot be Proven by Plaintiff</u>

          <u>Element 1</u>:  Plaintiff Cannot Prove that Atain Engaged in Unreasonable Conduct with Regard to the Parties' Insurance Relationship.

Briefly, it should be mentioned that in resisting a motion for summary judgment, the nonmoving party may not rest solely on the allegations in the pleadings but must instead

designate "specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477

U.S. 317, 324 (1986). Further, as relevant to this analysis:

> If the defendant in a run-of-the-mill civil case moves for summary judgment or
> for a directed verdict based on the lack of proof of a material fact, the judge must
> ask himself not whether he thinks the evidence unmistakably favors one side or
> the other but whether a fair-minded jury could return a verdict for the plaintiff on
> the evidence presented. The mere existence of a scintilla of evidence in support of
> the plaintiff's position will be insufficient; there must be evidence on which the
> jury could reasonably find for the plaintiff. The judge's inquiry, therefore,
> unavoidably asks whether reasonable jurors could find by a preponderance of the
> evidence that the plaintiff is entitled to a verdict—"whether there is [evidence]
> upon which a jury can properly proceed to find a verdict for the party producing
> it, upon whom the *onus* of proof is imposed. *Munson, supra,* 14 Wall., at 448.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202

(1986).  This is important in this case because Atain posits that Plaintiff cannot provide sufficient

evidence to meet this burden.

Regarding the Waldo Canyon Fire Claim, Plaintiff has not advanced sufficient evidence

to prove that Atain acted unreasonably in investigating and denying this claim. The record

reflects just the opposite: that Atain went above and beyond its obligations to Plaintiff to act in

good faith. First, Atain performed a thorough and timely investigation of the claim and

communicated with Plaintiff regularly throughout this process, despite the fact that Plaintiff's

reported date of loss for this claim preceded the inception of the Policy. Stipulation, ¶ 27.

As indicated in the Factual Background above, and in the parties' Stipulation, Atain

performed an extensive and exhaustive investigation. Stipulation, ¶¶ 20 - 26; *see also* **Exhibit B**,

January 16, 2015 Affidavit of Scott Boyd. Ultimately, the weight of the evidence disfavored

coverage and Atain denied the claim. While Plaintiff may disagree with the outcome, the record

does not support its claim for statutory or common law bad faith. Ultimately, it is Plaintiff who bears the burden of proof on this claim and even taking the evidence in the light most favorable to Plaintiff, the evidence does not support Plaintiff's claim. As a result, judgment should enter in favor of Atain.

Further, Atain could not have acted unreasonably in denying the Waldo Canyon Fire Claim where it had several "fairly debatable" reasons for doing so. *See* Stipulation, ¶ 36, Ogburn Letter of July 29, 2013, and discussion above. As Plaintiff is well aware, there is a factual dispute as to the actual date of loss for the claim. Atain's wildfire expert, the only expert who considered any dates before the Policy's inception, determined that damage to Green Earth's ventilation system due to particulate contamination would have occurred prior to July 1, 2012. Ash fallout at Green Earth's facilities would have been significant on the evening of June 23, 2012, the evening of June 24, 2012, from noon on June 26, 2012, through noon on June 27, 2012, and the afternoon of June 29, 2012. The expert also found that there were mostly clear skies over southern Colorado Springs on July 1, 2012. Stipulation, ¶ 35, Phoenix Investigation Report. Finally, Plaintiff is unable to meet its burden of proof to show that Atain acted in bad faith because Plaintiff neglected to disclose an expert witness on insurance industry standards. Without this expert testimony, Plaintiff cannot establish that Atain's handling and denial of the Waldo Canyon Fire Claim fell outside the scope of reasonable industry practice. *See Morris*, 192 P.3d at 524 (citing *Goodson*, 89 P.3d at 415).

Regarding the June 2013 Theft Claim, Plaintiff cannot prove that Atain acted unreasonably in investigating or responding to this claim. Immediately upon receiving notice of the June 7, 2013 Theft Claim, Atain retained AmeriClaim of Southern Colorado to investigate

Plaintiff's claimed damages. Stipulation, ¶ 50. The adjuster ultimately determined that the damage to tenant improvements and betterments – the only part of the leased facility covered by the Policy – totaled $2,377.81. Stipulation, ¶ 51. As Plaintiff is well aware, its Policy requires a $2,500.00 deductible. Atain therefore communicated to Plaintiff by letter dated September 13, 2013, that it did not owe Plaintiff any sum for the June 7, 2013 Theft Claim. Stipulation, ¶ 51. Until filing this lawsuit, Plaintiff failed to respond to Atain in any way regarding Atain's determination and never requested an appraisal as contemplated under the Policy. Stipulation, ¶ 52. The record reflects nothing but Atain's diligence in handling the claim.

Again, Plaintiff bears the burden of proof on this claim and even taking the evidence in the light most favorable to Plaintiff, the evidence does not support Plaintiff's claim. As a result, judgment should enter in favor of Atain. Plaintiff is further disabled from proving its claim because it neglected to designate an expert witness in the area of insurance industry standards. *See Morris*, 192 P.3d at 524 (citing *Goodson*, 89 P.3d at 415).

> Element 2:   Plaintiff Cannot Prove that Atain Either Knew of the Unreasonableness of its Conduct or Acted with Reckless Disregard of Such Unreasonableness.

First, regarding the Waldo Canyon Fire Claim, even if Atain's conduct was unreasonable, which Atain disputes, Atain lacked the scienter requirement for the second element of this cause of action and Plaintiff cannot prove otherwise. Specifically, the record does not show that Atain had any specific knowledge that its conduct was unreasonable, nor does the record show that Atain acted with deliberate indifference to any information concerning the Waldo Canyon Fire Claim. Rather, Atain engaged in a comprehensive investigation as described above, in which it considered all statements and submissions made by Plaintiff and its representatives, as well as

outside sources. *See* Stipulation, ¶ 36, Ogburn Letter of July 29, 2013, p. 1; Stipulation, ¶ 19, Boyd Reports 1-4; Stipulation, ¶ 35, Phoenix Investigation Report. In short, the actions undertaken by Atain simply do not rise to the level of bad faith.

In its submission of its Waldo Canyon Fire Claim to Atain, Plaintiff blatantly stated that its date of loss was June 26, 2012, three days prior to the inception of the Policy. Plaintiff did not even claim the July 1, 2012 date of loss until February 7, 2013, over seven months after the Waldo Canyon fire broke out and nearly three months after Plaintiff first submitted its claim to Atain. Regardless, by then Atain was already investigating the Claim, including the actual date of loss, through its independent investigator and wildfire expert. *See* Stipulation, ¶ 19, Boyd Reports 1-4; Stipulation, ¶ 35, Phoenix Investigation Report. After conducting an exhaustive survey of all evidence, which Atain reasonably relied upon, Atain's retained wildfire expert determined that the losses first commenced prior to the Policy's inception date of June 29, 2012. It should be noted that Mr. Schmitt's report is the only expert opinion offered with respect to whether any damages from the Waldo Canyon Fire Claim were sustained by Green Earth prior to the inception of the Policy. Even if Atain acted unreasonably in handling and denying Plaintiff's claim, which it disputes, it had no actual knowledge of this unreasonableness, nor is there any proof that it recklessly disregarded any unreasonableness. Plaintiff bears the burden of proof on this claim and even taking the evidence in the light most favorable to Plaintiff, the evidence does not support Plaintiff's claim. As a result, judgment should enter in favor of Atain.

Regarding the June 7, 2013 Theft Claim, Plaintiff is unable to prove the second element of bad faith, that Atain had actual knowledge of its unreasonableness or recklessly disregarded certain information. Atain timely adjusted the claim and retained an independent adjusting

company to conduct an investigation. Upon completion of the investigation, Atain concluded that the damages did not exceed the deductible. Therefore, it determined that no payment was owing. Atain timely communicated its position to Plaintiff, and Green Earth provided no response to Atain's conclusions short of filing this lawsuit. Green Earth could have availed itself of an appraisal as set forth in the Policy if it disputed the value calculations of Atain's independent adjuster, but it chose instead to simply file a lawsuit. As such, the record is completely devoid of any facts that would support Plaintiff's bad faith claims. In sum, Plaintiff bears the burden of proof on this claim and even taking the evidence in the light most favorable to Plaintiff, the evidence does not support Plaintiff's claim. Plaintiff's bad faith claim, therefore, fails with respect to the June 7, 2013 Theft Claim and judgment should enter in favor of Atain.

**2. Atain is Entitled to Summary Judgment on Plaintiff's Third Cause of Action: Violation of C.R.S. §§ 10-3-1115 and 1116.**

a. Burden of Proof and Elements

Section 10-3-1115(1)(a) of the Colorado Revised Statutes states that "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." C.R.S. § 10-3-1115(a)(1). Under C.R.S. § 10-3-1115, "an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit *without a reasonable basis* for that action." C.R.S. § 10-3-1115(2) (emphasis added). This section creates an express private right of action in addition to and different from common law bad faith claims. *Kisselman*, 292 P.3d at 972. While the "unreasonableness" element for a statutory claim mirrors that of the common law claim, the statutory claim does not require proof of the additional element that the insurer knew that its delay or denial was unreasonable or recklessly disregarded the claim. *Kisselman*, 292 P.3d at

972. Thus, "the only element at issue in the statutory claim is whether an insurer denied benefits without a reasonable basis." *Vaccaro v. Am. Family Ins. Group*, 275 P.3d 750, 760 (Colo. App. 2012).

As in claims for common law bad faith, the determination of whether an insurer has breached its duties to the insured is one of reasonableness under the circumstances. *Sipes v. Allstate Indem. Co.*, 949 F.Supp.2d 1079, 1084-85 (D. Colo. 2013). Reasonableness must be determined objectively, based on proof of industry standards. *Id*; *see also Baker v. Allied Property and Cas. Ins. Co.*, 939 F.Supp.2d 1091, 1107 (D. Colo. 2013). An industry expert is often required in order to prove the insurance industry standard. *See Baker*, 939 F.Supp.2d at 1107 (citing *Goodson*, 89 P.3d at 415). The possible remedies for violation of C.R.S. 10-3-1115 are described in C.R.S. § 10-3-1116. *Id*. Notably, a defendant in a statutory bad faith action may recover attorneys' fees where a court determines that the action was frivolous.

    b.  <u>Elements that Cannot be Proven by Plaintiff</u>

       <u>Element 1</u>:     Plaintiff Cannot Prove that Atain Unreasonably Delayed or Denied Payment of a Claim for Benefits Owed to Plaintiff.

For the same reasons as discussed above, Plaintiff cannot prove that Atain unreasonably delayed or denied payment to Plaintiff for its the Waldo Canyon Fire Claim or the June 7, 2013 Theft Claim.  Plaintiff bears the burden of proof on these claims and even taking the evidence in the light most favorable to Plaintiff, Plaintiff cannot prove the elements of either a common law bad faith claim or a claim for violation of C.R.S. 10-3-1115. Therefore, the Court should award summary judgment in favor of Atain on these two counts of Plaintiff's Complaint.

Atain also submits that it is frivolous for Green Earth to ask Atain to pay for its losses to its potted marijuana plants because Green Earth knew from the quote and the binder, before the

Policy was ever issued, that there was never intent on Atain's part to provide coverage for those losses. In addition, Green Earth's own representative and owner, Mr. Fallis, and its public adjuster, Mr. Dufour, have both referred to Plaintiff's potted marijuana plants as its "crop," meaning that Green Earth should have reasonably expected the Growing Crops Exclusion to apply. Stipulation, ¶ 9; **Exhibit E**, Deposition of Mr. Fallis.

Under Colorado law, an action is frivolous if the proponent can present no rational argument based on the evidence or law in support of a proponent's claim or defense, or the matter is prosecuted for the sole purpose of harassment or delay. *International Technical Instruments, Inc. v. Engineering Measurements Co.*, 678 P.2d 558, 563 (Colo. Ct. App. 1983) (superseded on other grounds as stated in *Colorado Dept. of Social Services v. Bethesda Care Center, Inc.*, 867 P.2d 4 (Colo. Ct. App. 1993)). To now argue that the term "growing crops" is ambiguous; that Green Earth never understood its potted plants to be considered a "crop;" or that the "growing crops" exclusion does not pertain to the potted marijuana plants is disingenuous, as discussed below. Rather, without a reasonable basis to do so, Plaintiff has maintained entitlement to coverage for these losses throughout this litigation. Atain asks this Court to determine that maintenance of such claims, under the circumstances, amounts to a frivolous claim. As such, Atain is entitled to an award of fees and costs in defending against Plaintiff's claims for losses to its potted marijuana plants.

### 3. Atain is Entitled to Summary Judgment on Plaintiff's First Cause of Action: Breach of Contract.

a. <u>Burden of Proof and Elements</u>

In order to prove its claim for breach of contract, Plaintiff must prove (1) the existence of a contract; (2) performance by Plaintiff or some justification for nonperformance; (3) failure to

perform the contract by Atain; and (4) damages to Plaintiff. *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). The "performance" element means "substantial" performance. *Id.* The parties' real dispute under this cause of action is as to whether Plaintiff's claimed losses are covered under the Policy.

In determining whether Plaintiff's claimed losses are covered under the Policy, the Court must consider longstanding Colorado law governing interpretation of insurance policies. Under Colorado law, "an insurance policy is a contract which should be interpreted consistently with the well settled principles of contractual interpretation." *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990). This Court should strive to give words used in the Policy their "plain and ordinary meaning unless the intent of the parties, as expressed in the policy, indicates that an alternative interpretation is intended. Courts should not rewrite clear and unambiguous contract provisions." *Id.* at 750. "[T]he interpretation of private contracts is ordinarily a question of state law..." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989). "Under Colorado law, the interpretation of a contract is generally a question of law for the court." *Theriot v. Colorado Ass'n of Soil Conservation Districts Med. Benefit Plan*, 38 F. Supp. 2d 870, 876-77 (D. Colo. 1999) (internal citations omitted). "The primary goal of [contract] interpretation is to determine and give effect to the intention of the parties." *Cache Nat. Bank v. Lusher*, 882 P.2d 952, 957 (Colo. 1994).

When a contract is clear and unambiguous by its terms, the contract must be construed according to its plain language. *Omnibank Parker Rd., N.A. v. Employers Ins. of Wausau,* 961 F.2d 1521, 1523 (10th Cir.1992). Whether a contract is ambiguous is a question of law for the court to decide. *Smalley & Co. v. Emerson & Cuming, Inc.*, 808 F. Supp. 1503, 1514 (D. Colo.

1992). "Contractual terms are not rendered ambiguous merely because the parties subsequently urge diverse interpretations." *Stichting Mayflower Recreational Funds v. Newpark Resources, Inc.,* 917 F.2d 1239, 1246-47 (10th Cir. 1990). "Rather, a contract is ambiguous where the text of the agreement reasonably allows for varying interpretations." *Theriot v. Colorado Ass'n of Soil Conservation Districts Med. Benefit Plan,* 38 F. Supp. 2d 870, 876-77 (D. Colo. 1999). If this Court determines that there are ambiguities in the Policy, it can reference dictionaries to assist it in determining the plain and ordinary meaning of words. *Hecla Mining Co. v. New Hampshire Ins. Co., supra,* 811 P.2d at 1091; *Chacon v. Am. Family Mut. Ins. Co., supra,* 788 P.2d at 750.

      b.  <u>Elements that Cannot be Proven by Plaintiff</u>

      <u>Element 3</u>:  Plaintiff Cannot Prove that Atain Failed to Perform Under the Policy.

Plaintiff cannot prove the third element of its breach of contract claim – that Atain failed to perform under the Policy – in regards to its alleged losses regarding potted marijuana plants and damage by burglars. The Policy unambiguously excludes coverage for these damages under a combination of the Growing Crops Exclusion and the Theft Exclusion. Each of these Policy provisions is discussed in turn.

*Damages to Potted Marijuana Plants under the Growing Crops Exclusion:* The Policy specifically excludes coverage for "growing crops." In relevant part, the Policy provides:

**A.    Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1.    Covered Property**

Covered Property, as used in the Coverage Part, means the type of

> property described in this Section, **A.1.**, and limited in **A.2.**, Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

***

> **2.      Property Not Covered**
>
> Covered Property does not include:

***

> **h.**      Land (including land on which the property is located), water, *growing crops* or lawns;

Stipulation, ¶ 10, Policy, CP 00 10 04 02, pp. 1-2 (emphasis added) (the "Growing Crops Exclusion").

"Growing crops" is not defined under the Policy, and therefore, must be afforded its plain and ordinary meaning. *See Cyprus Amax Minerals Co.*, *supra*. Black's Law Dictionary defines crops as "products that are grown, raised, and harvested," and defines growing crops as "crops that are in the process of growth." *Crops*, Black's Law Dictionary (9th ed. 2009). Webster's online dictionary defines crop, in part, as, "a plant or animal or plant or animal product that can be grown and harvested extensively for profit or subsistence." *Crop*, Merriam-Webster Online Dictionary, last visited April 9, 2015, http://www.merriam-webster.com/dictionary/crop. Applying these definitions, the Policy does not provide coverage for Plaintiff's potted marijuana plants. The Growing Crops Exclusion is not ambiguous, as it can only reasonably be interpreted in one way – to exclude damages for growing plants that have yet to be harvested. *See e.g. Seminis, Inc. v. Factory Mut. Ins. Co.*, 802 F.Supp.2d 1097, 1104 ("the term 'growing crops' is not ambiguous… That the term 'growing crops' may have multiple meanings when considered in the abstract, does not create an ambiguity"). It is clear that Plaintiff's marijuana plants are not

24

merely house plants. They are grown specifically for sustenance (medically) and profit. Thus, the potted marijuana plants (including all mother plants, flower plants, veg plants, and clones) for which Plaintiff seeks coverage fall squarely within the unambiguous and plain language of this Policy exclusion.

Even if this Court determines there is some ambiguity in the Growing Crops Exclusion, which Atain urges otherwise, this Court may look at extrinsic evidence to determine the intent of the parties. *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1314 (Colo. 1984). Here, the extrinsic evidence only bolsters Atain's position. Beginning with the insurance quote provided to Plaintiff, it is clear that, "[c]overage does not extend to growing or standing plants." Stipulation, ¶ 7, Insurance Quote. That quote was provided to Plaintiff's insurance agent, Stroup, whom Plaintiff appointed as its authorized agent and representative. Stipulation, ¶ 4, Letter of representation. Because Stroup was Plaintiff's appointed agent, any information that was conveyed to Stroup was, in effect, conveyed to Plaintiff. *See Interstate Employment System v. Hall,* 257 P. 1075, 1077 (Colo. 1927) (holding that it is the duty of a broker to furnish his client with whatever information he can reasonably obtain concerning the matter on which he is employed); *Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.*, 739 P.2d 239, 243 (Colo. 1987) ("There is no question that an insurance broker or agent who agrees to obtain a particular form of insurance coverage for the person seeking such insurance has a legal duty to obtain such coverage or notify the person of his failure or inability to do so."); *DC-10 Entertainment, LLC v. Manor Insurance Agency, Inc.*, 308 P.3d 1223, 1229 (Colo. Ct. App. 2013) ("A broker's failure to obtain the type of coverage requested by an insured may, in appropriate circumstances give rise to a negligence claim."); Moore and Co. v. T-A-L-L, Inc., 792 P.2d 794, 799 (Colo. 1990)

(stating with respect to a real estate broker that "it has long been the law in this state that the broker's concealment from the principal of information that bears upon the transaction in question will defeat the broker's claim for compensation.").

The quote also made clear, "PLEASE REVIEW THIS CAREFULLY AS IT MAY DIFFER FROM COVERAGES AND LIMITS REQUESTED." Stipulation, ¶ 7, Insurance Quote (emphasis in original). Atain is clear in that the scope of coverage requested by Green Earth may not be the same scope of coverage that is being offered. It is incumbent on Green Earth, whether through an agent or otherwise, to review and understand the scope of coverage being offered and Atain cannot be held responsible for Green Earth's failure to do so. *Spaur v. Allstate Ins. Co.*, 942 P.2d 1261, 1265 (Colo. Ct. App. 1996) ("to the extent the plaintiff [insured] argues that defendant [insurer] had an obligation to point out the coverage limits for derivative claims at the time the policy was purchased, we also disagree. As discussed, these terms are unambiguous, and it is the policyholder's responsibility to read the policy."); *see also Concialdi v. Pueblo Gas and Fuel Co.*, 328 P.2d 98 (Colo. 1958); *Smith v. Connecticut Mutual Life Ins. Co.*, 45 F.3d 427 (4th Cir. 1995) (corollary to insured's duty to read policy documents is that insurer has no duty to warn insured about the provisions).

After Plaintiff agreed to accept the insurance quoted it, it was then issued an insurance binder, which typically provides temporary coverage based upon the material terms of the contract. *See* 16 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 49:53 (4th ed. 1993). Again, the binder stated under the conditions heading, "[c]overage does not extend to growing or standing plants," which evidences the specific intent of the parties that, in fact, "coverage does not extend to growing or standing plants." Stipulation, ¶ 9, Insurance

Binder, p. 2. This evidence supports the interpretation that the potted marijuana plants (including all mother plants, flower plants, veg plants, and clones) are not covered under the Policy, and Plaintiff is inappropriately seeking coverage for items it knows Atain never intended to cover.

In further support of Atain's argument that Green Earth's potted marijuana plants constitute a "crop," Mr. Fallis, Green Earth's current owner, testified:

78

```
22      Q   What do you -- what is your understanding
23   of what crop output means? [referencing an exhibit]
24         MR. KLEIN:  Objection.  Form.
25      A   It is my understanding that the smoke and
```

79

```
 1   whatever was in the smoke damaged the production of
 2   the marijuana crop.
 3      Q   (By Ms. Ogburn)  Okay.  And when you say
 4   marijuana crop, you're talking about the marijuana
 5   plants in the grow facility?
 6      A   Marijuana plants.
```

***

80

```
11      Q   (By Ms. Ogburn)  Okay.  Other than what we
12   just talked about with the Waldo Canyon Fire claim,
13   did you have any other involvement in that claim on
14   behalf of Green Earth Wellness?
15      A   Helped -- helping to put together the
16   valuation of the damage to the crop.  To the
17   marijuana crop.
18      Q   Okay.  To the -- and when you say crop,
19   you're talking about the marijuana plants?
20      A   The marijuana plants.
```

**Exhibit E**, Deposition of Chris Fallis, pp. 78-80.

Mr. Fallis clearly understood that the marijuana plants constitute a "crop." Even Mr. DuFour, Plaintiff's public adjuster and agent, referred to the marijuana plants as "crops" on

several occasions. Stipulation, ¶ 27, correspondence from Tom Dufour. Accordingly, under the plain language of the Policy, the commonly understood meaning of the terms, and the extrinsic evidence provided, the potted marijuana plants are not covered under the Policy. Atain asks that this Court enter judgment in its favor on all claims for losses to: (1) permanently damaged mother plants ($118,478.59); (2) damaged (but still viable) mother plants ($25,573.78); (3) 165 flower plants ($86,120.00); (4) 165 veg plants ($2,475.00); and (5) 165 clones ($3,000.00).

Plaintiff may argue that the Growing Crops Exclusion should not apply because, as a medical marijuana dispensary, it reasonably expected that all of its medical marijuana would be covered. This argument is unpersuasive. The Colorado Supreme Court has held:

> In Colorado, there are two general circumstances where the doctrine of reasonable expectations renders exclusionary language unenforceable: (1) where an ordinary, objectively reasonable person would, based on the language of the policy, fail to understand that he or she is not entitled to the coverage at issue; and (2) where, because of circumstances attributable to an insurer, an ordinary, objectively reasonable insured would be deceived into believing that he or she is entitled to coverage, while the insurer would maintain he or she is not.

*Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1043 (Colo. 2011). This standard is consistent with the requirement that the words and phrases in the Policy be given their plain and ordinary meaning and that Plaintiff take responsibility for knowing and understanding the scope of coverage provided under the Policy. As demonstrated above, the doctrine of reasonable expectations cannot be applied to extend coverage to potted marijuana plants because the language of the Policy, together with the extrinsic evidence, clearly establishes intent to preclude marijuana plants from coverage.

Further, Colorado law explicitly states that "[a]n insured is charged with knowledge of the policy's terms and is therefore on notice that the scope of his, her, or its insurance coverage is governed by the terms of the policy..." *Unigard Sec. Ins. Co.*, 12 P.3d at 300 (citing *Pete's Satire, Inc. v. Commercial Union Ins. Co.*, 698 P.2d 1388 (Colo. App. 1985), *aff'd sub nom. Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.*, 739 P.2d 239 (Colo. 1987)). Based upon the plain language of the Policy and the conditions set forth in the quote and binder, Plaintiff was provided ample notice that the Policy would not and does not extend coverage for potted marijuana plants. As such, potted marijuana plants are not covered under the Policy as a matter of law and Plaintiff cannot prove that Atain breached the Policy by refusing to pay for claimed losses to its growing plants. Atain requests a ruling from this Court, granting judgment in its favor and finding that Atain did not breach the contract by refusing to pay for Plaintiff's losses as follows: (1) permanently damaged mother plants ($118,478.59); (2) damaged (but still viable) mother plants ($25,573.78); (3) 165 flower plants ($86,120.00); (4) 165 veg plants ($2,475.00); and (5) 165 clones ($3,000.00).

*Damages under the June 2013 Theft Claim and the Policy's Theft Exclusion:* Next, and relevant only to Plaintiff's June 2013 Theft Claim,[2] Plaintiff cannot prove that Atain breached the Policy by refusing to pay any amount for this claim. The Policy, by endorsement, contains an unambiguous exclusion for theft. In pertinent part, the Policy states:

> This endorsement modifies insurance provided under the following:
>
> CAUSES OF LOSS – SPECIAL FORM

---

[2] Again, Atain understands that Plaintiff does not seek any damages arising out of its March 2013 Theft Claim.

> The following is added to the EXCLUSIONS section:
>
> We will not pay for loss or damages caused by or resulting from theft.
>
> But we will pay for:
>
> 1.  Loss or damage that occurs due to looting at the time and place of a riot or civil commotion; or
>
> 2.  Building damage caused by the breaking in or exiting of burglars.
>
> And if theft results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Stipulation, ¶ 10, Policy, CP 10 33 06 95, p. 1 of 1 (the "Theft Exclusion").

Theft is not defined in the Policy, and, therefore, is assigned its plain and ordinary meaning. *See Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003). Theft is defined as "the felonious taking and removing of another's personal property with the intent of depriving the true owner of it; larceny." *Theft*, Black's Law Dictionary (9th ed. 2009). Applying this definition, the Theft Exclusion precludes coverage for losses resulting from the illegal taking of Plaintiff's property with intent to deprive Plaintiff of such property. *See Riverbend Capital, LLC v. Essex Ins. Co.*, 2010 WL 3942908, at *5 (E.D. La., Oct. 5, 2010) (stating that a substantially similar policy provision excluding "loss or damage… caused by or resulting from theft" encompasses the stolen property and incidental damage in furtherance of obtaining the stolen items).[3]

---

[3] While this case is persuasive and not controlling, there is a lack of controlling decisions on the interpretation of theft exclusions. This lack of controlling decisions on the interpretation of similar theft exclusions demonstrates a lack of ambiguity in the plain language of the Theft Exclusion. Were this, and similar provisions, ambiguous, undersigned counsel would expect a far greater number of relevant court decisions.

Under the plain language of this endorsement, which modifies the applicable covered causes of loss form, "damages caused by or resulting from theft" are not covered under the Policy. There are only two exceptions to this exclusion, which act to reinstate otherwise excluded losses: (1) caused by looting; or (2) to the building due to the breaking in or exiting of burglars. The first exception does not apply. Regarding the second exception, Atain acknowledges that building damage caused strictly by burglars entering or exiting is covered. However, it is Plaintiff's burden to establish which of its losses, if any, pertain to entering or exiting its premises.

By its plain terms, the Policy does not provide coverage for losses resulting from a theft. In order to show that an exception to the Theft Exclusion applies, Plaintiff bears the burden of demonstrating what portion of its claimed losses relate to damage to improvements it made to the building and caused by burglars entering or exiting the premises. *See Certain Underwriters at Lloyds, London v. Law*, 570 F.3d 574, 579-80 (5th Cir. 2009) (discussing that the scope of an identical ingress/egress exception to a theft exclusion is limited to attempts to enter the interior space of a building). Because the unambiguous language of the Theft Exclusion precludes coverage for losses for stolen items or damage caused in furtherance of the stealing of such items, Plaintiff cannot claim these losses and damages under the Policy, as a matter of law. Further, if the total sum of Plaintiff's damages resulting from burglars entering or exiting the building during any single theft does not exceed the Policy's $2,500 deductible, Atain is required to pay no portion of Plaintiff's June 2013 Theft Claim, and again, the breach of contract claim fails. Therefore, with regards to the June 2013 Theft Claim and because Plaintiff cannot meet its burden of establishing that its losses fall within the exception to the Theft Exclusion, Atain

requests judgment in its favor on Plaintiff's claimed losses of "505 Burglary/Structure $ 7,933.85."

Under Colorado substantive law, the insured bears the burden of proving facts bringing them within the exception to an insurance policy's exclusion. *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 453 F.3d 1281, 1287 (10th Cir. 2006) (applying Colorado law in a diversity action and stating that "if the insurer shows that an exclusion applies, the burden then shifts back to the insured to prove the applicability of an exception to the exclusion."). In *Rodriguez v. Safeco Ins. Co. of America*, 821 P.2d 849, 853 (Colo. Ct. App. 1991), the court addressed as similar issue and stated as follows:

> The trial court properly held that plaintiffs, as assignees of the insured, had the initial burden to prove their entitlement to recover under the general provisions of the policy and that the insurer had the burden to prove the applicability of the 'business pursuits exclusion to exempt it from liability. The court also correctly concluded that the plaintiff had the burden of proving Safeco's ultimate liability and, in particular, the applicability of the exception to the exclusion upon which they posited their claim after Safeco had made a *prima facie* showing that the injury resulted from 'business pursuits.'

(internal citations omitted).

Here, Plaintiff cannot meet its burden to show that any of its damages fall within an exception to the Theft Exclusion. Broken down, Plaintiff must demonstrate that its damages relate to the tenant improvements and betterments it made to the building; and it must demonstrate that the damages were caused when the burglars either entered or exited the building. Damage to portions of the building that do not constitute tenant improvements or betterments is not covered because Plaintiff has no insurable interest in that portion of the

building. Likewise, any damage not done while the burglars were specifically entering or exiting the building is not covered. Plaintiff cannot meet its burden in this regard and Atain asks that judgment be entered in its favor on Plaintiff's claimed losses to the "505 Burglary/Structure $ 7,933.85."

In support of its position, Atain notes that the police report disclosed by Plaintiff establishes that the losses suffered as a result of the theft consist of: damage to the building caused by the breaking in and exiting of the thieves; numerous stolen items; and vandalism to the interior of the retail shop. Stipulation, ¶ 47. To be clear, neither the stolen items nor the vandalism is covered under the plain language of the Policy. Further, if Plaintiff cannot distinguish between those damages done as a result of vandalism as opposed to burglars breaking in and exiting, then Plaintiff cannot meet its burden of demonstrating that the damages are covered.

Element 4: Plaintiff cannot prove that its damages are covered under the Policy.

For the reasons discussed above, Plaintiff likewise cannot prove that its damages are covered under the Policy. In this case, Plaintiff claims the following:

```
505 Smoke/Structure $ 46,432.32
519 Smoke/Structure $ 15,759.51
505 Burglary/Structure $ 7,933.85
Total Stock $275,175.37
Less Deductible <$ 2,500.00>
Less Prior Payments <$ 0.00>
--------------------------------------------------------------------------
Policy Proceeds $342,801.05
```

Broken down, Plaintiff's claimed loss for "505 Burglary/Structure $ 7933.85" fails for the reasons stated above. Likewise, Plaintiff's claimed loss for that portion of the "Total Stock

$275,175.37," as related to potted plants fails. As stipulated by Plaintiff, the following constitute losses to Plaintiff's growing crops: (1) permanently damaged mother plants ($118,478.59); (2) damaged (but still viable) mother plants ($25,573.78); (3) 165 flower plants ($86,120.00); (4) 165 veg plants ($2,475.00); 165 clones ($3,000.00). To be clear, Atain does not seek judgment in its favor on Plaintiff's claimed losses regarding the 9 lbs. of unusable harvest, in the amount of $39,528.00. In sum, Atain requests this Court enter judgment in its favor on the following categories of losses claimed by Plaintiff:

> 505 Burglary/Structure $ 7,933.85
> Permanently damaged mother plants $118,478.59
> Damaged (but still viable) mother plants $25,573.78
> 165 flower plants $86,120.00
> 165 veg plants $2,475.00
> 165 clones $3,000.00

Atain is not requesting judgment on the following categories of losses at issue in this case:

> 505 Smoke/Structure $ 46,432.32;
> 519 Smoke/Structure $ 15,759.51; and
> 9 lbs. of unusable harvest, in the amount of $39,528.00

## V.    CONCLUSION

Because the balance of the evidence, even when viewed in the light most favorable to Plaintiff, is insufficient to establish the elements of its claims, Atain is entitled to summary judgment on Claim II for breach of the implied covenant of good faith and fair dealing and Claim III for violation of C.R.S. §§ 10-3-1115 and 1116. As a matter of law, Atain is also entitled to summary judgment on Plaintiff's requests for coverage for damage to its potted marijuana plants and any damages caused by the June 2013 theft.

WHEREFORE, Defendant Atain Specialty Insurance Company respectfully requests that this Honorable Court enter an order:

    a.  awarding summary judgment to Atain on Plaintiff's Second Claim for Relief (mislabeled as its First Claim for Relief) and Third Claim for Relief;

    b.  awarding summary judgment to Atain on Plaintiff's First Claim for Relief as to:

1. 505 Burglary/Structure $ 7,933.85;
2. Permanently damaged mother plants $118,478.59;
3. Damaged (but still viable) mother plants $25,573.78;
4. 165 flower plants $86,120.00;
5. 165 veg plants $2,475.00; and
6. 165 clones $3,000.00.

    c.  awarding Atain its attorneys' fees and costs incurred in defending these claims, pursuant to C.R.S. § 10-3-1116(5); and

    d.  awarding such further or additional relief as the Court deems just.

Respectfully submitted this 29th day of April 2015.

PRYOR JOHNSON CARNEY KARR
NIXON, PC

*/s/ Melissa Ogburn*

Melissa A. Ogburn, #34910
Lauren P. Shannon, #47395
5619 DTC Parkway, Suite 1200
Greenwood Village, CO 80111
MOgburn@pjckn.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that on this 29 day of April 2015, a true and correct copy of the foregoing **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**, was filed with the clerk of court using Pacer, which will send notification of such filing to all counsel of record.

Robert D. Green
Hunter Klein
Robert D. Green & Associates, P.C.
440 Louisiana Street, Suite 1930
Houston, TX 77002
green@greentriallaw.com
klein@greentriallaw.com
*Attorneys for Plaintiff*

Daniel P. Barton
Ryan K. Haun
Barton Law Firm
1201 Shepherd Drive
Houston, TX 77007
dbarton@bartonlawgroup.com
rhaun@bartonlawgroup.com
*Attorneys for Plaintiff*

Terry E. Rector
Rector Law Firm
131 S. Weber Street
Colorado Springs, CO 80903
trector@terryrectorlaw.com
*Attorneys for Plaintiff*

L. Dan Rector
Rector Law Firm
131 S. Weber Street
Colorado Springs, CO 80903
ldanrec@comcast.net
*Attorneys for Plaintiff*

*/s/ Susan Ramsey*

_____

Susan Ramsey