IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:13-cv-03452-MSK-NYW

GREEN EARTH WELLNESS CENTER LLC

    Plaintiff,

v.

ATAIN SPECIALTY INSURANCE COMPANY

    Defendant.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT ATAIN SPECIALTY INSURANCE COMPANY'S MOTION FOR DETERMINATION OF QUESTION OF LAW REGARDING LEGAL INTERPRETATION OF POLICY PROVISION**

---

COMES NOW Plaintiff Green Earth Wellness Center, LLC ("Green Earth"), through its attorneys Robert D. Green & Associates, and submits the following Response to Defendant Atain Specialty Insurance Company's Motion for Determination of Question of Law Regarding Legal Interpretation of Policy Provision (Doc. 74), and would respectfully show as follows:

**I.**

Although Colorado State Rules of Civil Procedure 56(h) provides for a "Motion for Determination of Question of Law,[1]" the Federal Rules do not provide for such a mechanism.[2]

---

[1] C.R.C.P. 56(h): "**Determination of a Question of Law**. At any time after the last required pleading, with our without supporting affidavits, a party may move for a determination of a question of law. If there is no genuine issue of any material fact necessary for the determination of the question of law, the court may enter an order deciding the question."

Even under the Colorado rule, which is not applicable, there must be an absence of a "genuine issue of any material fact." C.R.C.P. 56(h). As outlined below, a fact issue exists as to when the damage commenced making Atain's motion improper. Atain is in essence asking the court for an advisory opinion: "If the jury finds that the losses began before the policy period is there coverage?"

Federal courts established pursuant to Article III of the Constitution do not render advisory opinions. *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947). The implicit policies embodied in Article III, and not history alone, impose the rule against advisory opinions on federal courts. *Flast v. Cohen*, 392 U.S. 83, 96 (1968). The disagreement posed in a case must not be contingent but must have taken on a fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose in deciding them. *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 244 (1952). In order to avoid improper advisory opinions on "abstract propositions of law," "a present, live controversy" must exist concerning the issues before the court. *Hall v. Beals*, 396 U.S. 45, 48 (1969). A federal court's judgments must resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). Here, Atain is asking for the court to make a determination based upon a hypothetical state of facts, precisely the kind of advisory opinion prohibited by Article III of the Constitution.

---

[2] *See generally* F.R.C.P. 56

The primary factual dispute in this case is whether the damage occurred before or after 12:01 a.m. June 29, 2012, the date that the policy began. The only direct evidence of when the damage occurred is the deposition and examination under oath statement of Justin Flowers and the Affidavit of Gary Raymer.[3] Gary Raymer, a disinterested former employee of Green Earth, testified that he visited the facility every day during the week of June 25, including and after the evacuation date of June 26, 2012.[4] Mr. Raymer testified that he visited the facility on June 26, 27, and 28, 2012 and observed no soot or smoke in the building, nor soot or smoke on the plants on those days.[5] Justin Flowers testified that he too, was in the grow facility every day prior to the loss and during the week of June 26, 2012.[6] He too testified that he observed no soot or smoke in the facility prior to June 30, 2012.[7] He testified that when he entered the facility the morning of July 1, 2012 he observed for the first time, the presence of soot and smoke in the building.[8] Both men, who were actually working at the facility, swear that there was no damage to the product on as of June 28, 2012.[9]

---

[3] *See* Doc. 51 Exhibit AF – Affidavit of Gary Raymer

[4] *Id*.

[5] *Id*.

[6] *See* Doc. 42 Exhibit O at 57:15-23; 62:7-8; 63:6-11.

[7] *Id*. at 68:3-69:2.

[8] *Id*. at 69:20-70:5.

[9] *See* Affidavit of Justin Flowers, Attached hereto as **Exhibit A,** *see* Doc. 51 Exhibit AF.

Rather than believe the word of their policyholder, the insurance company claims they talked to other people in the neighborhood.[10] The insurance company claims these other people said that there was some smoke in the area prior to July 1, 2012.[11] They do not claim that their witnesses knew when the damage to Plaintiff took place. We do not know what they actually said or who they were because the adjuster shredded all notes of his conversations.[12] Defendant's adjusters and Defendant's corporate representative both admit that they have no direct evidence of when the product was actually damaged.[13]

Incredibly, with that background, Defendant in its motion chastises Plaintiff for not stipulating that Defendant is right and that the occurrence did not take place during the policy period.

Plaintiff's response to Defendant's request for such a stipulation was as follows:

As far as 32 goes – we do not agree that any damages "commenced" prior to the inception of the policy. I appreciate that Atain's position is that some if not all of the damages took place before June 29, 2012, but our position is now and has always been that all the damages occurred after June 29, 2012 and that none of the damages took place prior to June 29, 2012. With that being said, we cannot and will not stipulate to number 32.[14]

It is certain that Atain will not stipulate that the occurrence took place during the policy period. It is the central issue of the case.

---

[10] Doc. 71 Exhibit Q p. 2

[11] Doc. 42 Exh. N p. 62:21-63:6.

[12] Doc. 71 ¶¶ 25-26

[13] Doc. 42 Exhibit K p. 54:21-23; Doc. 42 Exhibit H at 24:21-25:7

[14] Doc. 74 Exhibit A p. 3

The factual dispute is further delineated in the competing expert reports. The expert for Atain, Kirk Schmitt, concluded that ash fallout at the location would have been significant on the evening of Jun 23, 2012, then again on the evening of June 24, 2012, then two days later at noon on July 26, 2012 through noon on June 27, 2012, and then two days later on the afternoon of June 29, 2012[15] (the latter during the policy period). His ultimate conclusion was that "damage to the Green Earth Wellness Center due to particulate contamination would have occurred before July 1, 2012."[16] The policy period started at 12:01 a.m. on June 29, 2012.[17] In his heading however, he lists the date of loss as July 1, 2012.[18]

> Plaintiff's expert, Greg Becker, opined as follows:
>
> The mechanism stated in this report correlates with the owners observations at this site. Smoke plume may not have been noticed by the property owner because the delivery mechanism was short (approximately 1 hour); smoke was delivered to the property in the dark evening or early morning hours and/or the owner was not at the work site at the time of delivery (i.e. afternoon on June 30th).
>
> Based on the data available, smoke came from areas of fires were still burning on June 30 with those that were smoldering from June 29th progression fires. The fire locations during this time easily correlated with directions that would deliver the plume to this site. Further, dispersion of the plume would increase this correlation.[19]

In short, there are different theories as to several finite smoke exposures to the area that started then stopped until the next exposure. Some of the alleged exposure started and ended

---

[15] Doc. 71 Exhibit P Report of Kirk Schmitt, p. 3 ¶ 9.

[16] *Id*. at p. 4

[17] Doc. 71 Exhibit E p. 3

[18] *Id*. at p. 1

[19] *See* Affidavit and Report of Greg Becker, **attached hereto as Exhibit B.** p. 9

prior to the policy period. Some of the alleged exposure started and ended during the policy period. The only direct evidence of damage to the marijuana comes from the eyewitnesses who testify that there was no damage until after the policy period started at 12:01 a.m. on June 29, 2012. There has been no theory proffered that any smoke exposure was continuous over several days starting before then into the policy period.

The relevant policy language reads as follows:

## COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

### H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:

    a. During the policy period shown in the Declarations; and

    b. Within the coverage territory.

2. The coverage territory is:

    a. The United States of America (including its territories and possessions);

    b. Puerto Rico; and

    c. Canada.

Stipulations, ¶ 10, CP 00 90 07 88.

David Poynor, Plaintiff's structure expert, notes:

> These two systems drew the soot and smoke-filled outside air into the business. The special filters that are used on both fresh air intake systems were

overwhelmed by the intrusion of soot and smoke, as they failed, allowing soot, smoke, and ash to enter the building. Upon my inspection I saw one of these filters completely saturated with soot; this confirmed my opinion of the path the soot, smoke, and ash took to enter the building. Because the outside air was heated, the 3 Ton HVAC system, in an attempt to cool the building, turned on and the smoke and soot was circulated throughout the building.[20]

This A/C system drew air from the outside in and at least initially filtered the ash out of the air protecting the plants. It was not until the filters were overcome did smoke enter the grow room and damage the plants.

Justin Flowers testified:

Q: (By Ms. Ogburn) And is it your testimony that there was nothing out of the ordinary before July 1t?

A: When I left, I also left in the morning. I left at about noon.

Q: On what day?

A: On the 30th.

Q: All right.

A: When I left at noon, there was nothing out of the ordinary then. So between noon that day and when I was – when I went into the shop on the 1st, that's when we got smoke in there. That's when it happened.[21]

Gary Raymer testified:

"Part of my job at Green Earth Wellness Center was helping the owner tend to the plants. This required that I visit the property to perform my duties every day throughout the week beginning with June 25, 2012, even after mandatory evacuation on June 26, 2012. I visited the property on the days following the mandatory evacuation.

During my time at 505 W. 30th Street, Colorado Springs, CO, I observed no soot, or smoke enter the building, nor damage to the plants on June 26, 27, or 28.

---

[20] Affidavit and Report of David Poynor, **attached hereto as Exhibit C**. p. 7-8

[21] *See* Defendant's Exhibit O p. 69:20-70:5

I remember this because the damages to the plants occurred at or very near the time of my birthday, which is July 2."[22]

The question therefore is when did the damage commence? The policy covers "loss or damage" that commences during the policy period. The only direct evidence of that is during the policy period. It is of no consequence when smoke plumes were in the area until a smoke plume actually caused the damage.

When Atain asks for a ruling that if the "losses began prior to the policy period" then there is no coverage. It assumes multiple losses or multiple occurrences and implies that if there was smoke around the dispensary at any time prior to the policy then there is no coverage even though Plaintiff can show there was not damage until after the policy began.

Atain relies upon the *Cher-D. Inc.* case out of Pennsylvania to support its request. However, the only thing helpful to Atain in that opinion is where it defines "commence" as "to begin," a definition with which Plaintiff does not necessarily disagree.

The case, which involves two building fires, the second of which was a total loss, goes on to discuss that the two fires in question were related but that the first fire did not proximately cause the damage that was caused in the second fire. Therefore the court concluded that the damage caused by the second fire which occurred after the policy period, did not commence at the first fire. Just like here, prior smoke plumes prior to the policy period, that did not proximately cause the damage claimed, could not constitute the commencement of damage prior to the policy.

**PRAYER**

---

[22] Doc. 51 Exhibit AF

WHEREFORE, and based on the foregoing, Plaintiff Green Earth Wellness Center, LLC respectfully requests that the Court enter an Order denying Defendant Atain Specialty Insurance Company's Motion for Determination of Question of Law Regarding Legal Interpretation of Policy Provision.

Respectfully submitted this 20th day of May, 2015.

By:    /s/Robert D. Green
        Robert D. Green

**ROBERT D. GREEN & ASSOCIATES, P.C.**
Robert D. Green, #46875
Hunter M. Klein
440 Louisiana Street, Ste. 1930
Houston, Texas 77002
Telephone: (713) 654-9222
Facsimile: (713) 654-2155
e-mail: green@greentriallaw.com
e-mail: klein@greentriallaw.com
*Attorneys for Plaintiff*

By: */s/ Daniel P. Barton*
     Daniel P. Barton
     Ryan K. Haun

**BARTON LAW FIRM**
1201 Shepherd Drive
Houston, Texas 77007
Telephone: (713) 227-4747
Facsimile: (713) 621-5900
e-mail: dbarton@bartonlawgroup.com
e-mail: rhaun@bartonlawgroup.com
*Attorneys for Plaintiff*

OF COUNSEL:

Terry E. Rector, #11486
RECTOR LAW FIRM
131 S. Weber Street
Colorado Springs, CO 80903

Telephone: (719) 578-1106  
Facsimile: (719) 635-3071  
e-mail: trector@terryrectorlaw.com

L. Dan Rector, #7568  
131 S. Weber Street  
Colorado Springs, CO 80903  
Telephone: (719) 473-0075  
Facsimile: (719) 635-3071  
e-mail: ldanrec@comcast.net

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of May, 2015, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Melissa A. Ogburn
Pryor Johnson Carney Karr Nixon, P.C.
5619 DTC Parkway, Suite 1200
Greenwood Village, Colorado 80111
*Counsel for Atain Specialty*

*/s/ Robert D. Green*
Robert D. Green