# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Chief Judge Marcia S. Krieger

Civil Action No. 13-cv-03452-MSK-NYW

**THE GREEN EARTH WELLNESS CENTER, LLC,**

     **Plaintiff,**

**v.**

**ATAIN SPECIALTY INSURANCE COMPANY,**

     **Defendant.**

_____

## OPINION AND ORDER GRANTING AND DENYING, IN PART, PENDING MOTIONS FOR SUMMARY JUDGMENT
_____

     **THIS MATTER** comes before the Court pursuant to the Defendant's ("Atain") Motion for Summary Judgment (**# 72**), the Plaintiff's ("Green Earth") response (**# 81**), and Atain's reply (**# 88**); Atain's "Motion to Determine Question of Law Regarding Legal Interpretation of Police Provision" (**# 74**), Green Earth's response (**# 83**), and Atain's reply (**# 86**); Atain's "Motion to Determine Question of Law Regarding Application of Federal Law and Public Policy" (**# 75**), Green Earth's response (**# 80**), and Atain's reply (**# 87**); and Green Earth's Motion for Partial Summary Judgment (**# 77**), Atain's response (**# 84**), and Green Earth's reply (**# 89**).

## FACTS

     The Court offers a brief factual recitation here, and elaborates as appropriate in its analysis.

     Green Earth operates a retail medical marijuana business and an adjacent growing facility in Colorado Springs, Colorado. In April 2012, Green Earth sought commercial insurance for its

business from Atain.[1]  Atain issued Green Earth a Commercial Property and General Liability Insurance Policy (hereinafter "the Policy") that became effective June 29, 2012.

A few days earlier, on June 23, 2012, a wildfire started in Waldo Canyon outside of Colorado Springs.  Over the course of several days, the fire advanced towards the city.  The fire did not directly affect Green Earth's business, but Green Earth contends that smoke and ash from the fire overwhelmed it's ventilation system, eventually intruding into the growing operation and causing damage to Green Earth's marijuana plants.

In November 2012, Green Earth made a claim under the Policy for the smoke and ash damage.  Atain hired several agents, including an adjuster and an investigator, to assess the claim.  The investigation extended over several months.  Finally, in July 2013, Atain formally denied the claim, finding that: (i) although Green Earth claimed that the smoke and ash damage occurred beginning on July 1, 2012, smoke and ash from the fire would have been drawn into the business premises by June 23 or 24, 2012, prior to the effective date of the Policy; (ii) Green Earth's misrepresentations about the date of the loss constituted material misrepresentations under the Policy voiding any coverage; (iii) Green Earth did not mitigate its losses because its personnel did not take any measures to protect Green Earth's plants from incoming ash and soot between June 23 and July 1; and (iv) Green Earth failed to give Atain timely notice of its loss, waiting until November 25, 2012 to make a claim.

Separately, on June 7, 2013, thieves entered Green Earths grow facility through a vent on the roof and stole some of Green Earth's marijuana plants.  At some unspecified point in time, Green Earth made another claim on the Policy for damage to the roof and ventilation system.

---

[1]    In reality, both parties conducted all aspects of this transaction trough their own designated agents.  Neither party attempts to disclaim responsibility for acts or statements made by their agents, and thus, for purposes of convenience, the Court simply disregards the parties' agents and refers to the parties themselves as performing the acts in question.

Atain investigated the claim. On September 13, 2013, Atain denied the claim, finding that the damage to the roof and ventilation system amounted to approximately $2,400, less than the Policy's $ 2,500 deductible.

On December 20, 2013, Green Earth commenced this action, asserting three claims: (i) breach of contract by failure to pay the claims Green Earth made under the Policy; (ii) what appears to be a statutory claim for bad faith breach of insurance contract under C.R.S. § 10-3-1104(h)(VII); and (iii) a claim for unreasonable delay in payment under C.R.S. § 10-3-1115.

Having now concluded discovery, both parties have filed a variety of dispositive motions. Atain filed a Motion for Summary Judgment **(# 72)**, arguing: (i) as to Green Earth's bad faith claim, Green Earth cannot show that Atain acted unreasonably in investigating either the fire claim or the theft claim; (ii) if Atain acted unreasonably in handling either claim, Green Earth cannot show that it did so knowingly or recklessly; (iii) as to the delayed payment claim, Green Earth cannot show that its delay or denial in authorizing payment of the claim(s) was unreasonable, for essentially the same reasons as set forth regarding the bad faith claim; and (iv) as to the breach of contract claim, Green Earth's claim for benefits relating to damage to potted marijuana plants is barred by the "growing crops" exclusion in the Policy and the damage to the roof and ventilation system is barred by the "theft" exclusion in the Policy.

Atain filed two separate "Motion[s] for Determination of Question[s] of Law." The first **(#74)** is fairly abbreviated, apparently requesting that the Court construe the Policy's term "commencing" consonantly with the construction given that term in *Cher-D, Inc. v. Great American Alliance Ins. Co.*, 2009 WL 943539 (E.D.Pa. Apr. 7, 2009). The other **(# 75)** is considerably more elaborate, requesting that the Court resolve two questions: (i) "Whether, in light of [Colorado's Medical Marijuana Act], federal law, and federal public Policy, it is legal for

Atain to pay for damages to marijuana plants and products, and if so, whether the Court can order Atain to pay for these damages"; and (ii) "Whether, in light of [those same authorities], the Policy's Contraband Exclusion removes Green Earth's marijuana plants and marijuana material from the Policy's coverage" (and arguing that the answer to the first is "no" and the answer to the second is "yes").

Green Earth filed its own Motion for Partial Summary Judgment (# 77), arguing that: (i) as a matter of law, it is entitled to coverage for the loss of or damage to marijuana plants because they constitute "Stock" under the terms of the Policy; and (ii) Green Earth is entitled to summary judgment on Atain's affirmative defense of "Policy limitations," because neither the "growing crops" or "contraband" exclusions prevent coverage of the damaged plants.

## ANALYSIS

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment

motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

This case involves cross-motions for summary judgment. "Because the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a *prima facie* case or to establish a genuine dispute as to material fact, cross motions must be evaluated independently." *In re Ribozyme Pharmaceuticals, Inc., Securities Litig.*, 209 F. Supp.

2d 1106, 1112 (D. Colo. 2002); *see also Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

Rather than address the motions *seriatim*, the Court finds it more appropriate to sort the issues raised by the parties based on the two insurance claims Green Earth made on Atain, and then to address the various issues raised by the parties' motions that are pertinent to each claim.

### B. The Waldo Canyon fire claim

To understand the context in which this dispute arises, the Court detours briefly into an examination of Green Earth's growing operation. The parties entered into a joint stipulation of facts (**# 71**), designed to facilitate the Court's consideration of the summary judgment motions. The stipulation provides that Green Earth's claim relating to the Waldo Canyon fire seeks coverage for losses relating to several different classifications of plants: "mother plants," "flower plants," "veg plants," "clones," and "finished product," all of which were allegedly damaged by smoke and ash. The parties' stipulation does not elaborate on the particular function that each of these classifications serve in the production process; it states only that all of these are "potted plants" which are "grown indoors under artificial lighting in pots."

Green Earth's motion attaches an affidavit from its expert, Vincent Hanson. Mr. Hanson's affidavit recites "certain universal steps that all [marijuana] growers utilize" to produce product, and attests that Green Earth follows those same steps.[2] Greatly summarizing Mr.

---

[2]    Atain contends that the Court should refuse to consider Mr. Hanson's affidavit because the opinions he presents "exceed the scope of opinions designated" in Green Earth's Rule 26(a)(2) disclosures. The Court has reviewed those disclosures and finds that Mr. Hanson's opinions fall within his disclosed expertise in "the area of the marijuana industry." Atain did not offer any evidence of its own to dispute Mr. Hanson's contentions.

Hanson's description, "mother plants" are plants of each individual strain of marijuana that Green Earth offers. Mother plants are not cultivated to produce useable marijuana on their own; rather, they are maintained by the grower solely for the purpose of producing a constant and reliable supply of genetically-identical "clones." A clone is a portion of the mother plant that is cut off and planted in a growing medium until it produces its own root, becoming a viable marijuana plant in its own right. The clones then grow to maturity. Mature clones are kept by the grower in one of two states: a "vegetative" (or "veg") state, in which the plant is kept under near constant lighting to prevent it from flowering; and a "flowering" state, in which the plant is subject to intermittent light and darkness in order to induce it to produce flowers and buds. At the appropriate time, the grower harvests the flowering clone, cutting off flowers and buds (and sometimes other portions of the plants), drying that material, and selling it.

For purposes of this case, Green Earth's claim under the Policy relating to the Waldo Canyon fire can be broken into two parts: a claim for more than $ 200,000 in damage to Green Earth's grow operation, namely its growing mother plants and clones, and a claim for approximately $ 40,000 in damage to buds and flowers that had already been harvested and were being prepared for sale.

Green Earth's summary judgment motion seeks judgment in its favor on its breach of contract claim, arguing that both losses were covered under the Policy's grant of coverage over Green Earth's "Stock." Atain seeks summary judgment on Green Earth's breach of contract claim relating to the Waldo Canyon fire claim, arguing: (i) that the Policy provision covering "Stock" does not apply to the growing plants; (ii) that any grant of coverage that may exist regarding the growing plants is subject to an exclusion from coverage of "growing crops"; (iii) a somewhat unclear argument to the effect that Green Earth's losses commenced prior to the

coverage period; (iv) that any coverage of growing or finished marijuana is subject to an exclusion of coverage as "Contraband"; and (v) that a contention that any grant of coverage is, essentially, void as against public Policy. The Court takes these arguments in turn.

### 1. Policy interpretation generally

The parties have not addressed what jurisdiction's law governs the Policy, but both rely on Colorado law. The "Service of Suit Endorsement" in the Policy itself seems to suggest that disputes between the parties will be governed by the law of the state in which the suit is brought – here, Colorado. In Colorado, interpretation of a contract's terms presents a question of law to be resolved by the Court. *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999).

When construing the terms of a contract, the Court's ultimate objective is to give effect to the parties' mutual intentions. *East Ridge of Fort Collins, LLC v. Larimer & Weld Irrig. Co.*, 109 P.3d 969, 973 (Colo. 2005). Absent some showing that the parties intended otherwise, the Court indulges in the assumption that the plain and ordinary meanings of the words used in the contract reflect the parties' agreement. *Id.*; *Level 3 Communications, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008). Where the plain language is, of itself, insufficient to compel an unambiguous interpretation, the Court turns to a variety of additional rules help shape its analysis, including various canons of construction – *e.g.* that the Court should examine a given phrase in the context of the agreement as a whole, not in isolation; that specific provisions addressing an issue trump more general ones; that the Court should avoid constructions that render a provision superfluous or nonsensical; and that the Court must not add to or subtract from the agreement's terms. *Id.; Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003). Extrinsic evidence may be relevant in demonstrating whether particular language is or is not ambiguous. *Id.* If the Court still cannot ascertain the appropriate interpretation after

all this, it defaults to the rule that ambiguities must be resolved against the drafter of the language, here, Atain.  *State Farm Mut. Auto Ins. Co. v. Nissen*, 851 P.2d 165, 166 (Colo. 1993).

      2.  <u>"Stock"</u>

The Policy provides that it covers, among other things, Green Earth's "Business Personal Property located in or on the [covered] building[s]," including "Stock," which the Policy defines as "merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping."  The parties agree that the finished product – the harvested flowers and buds – allegedly damaged by the smoke and ash qualify as "Stock" (although Atain disputes that such product is covered for other reasons discussed below).  The first question thus presented is whether the damaged mother plants and clones (whether in veg or flowering states) are covered as  "Stock."

The Policy defines "Stock" to include "raw materials and in-process or finished goods." A "raw material" is "the basic material from which a product is manufactured or made; unprocessed material."  *Oxford English Dictionary*, 3d Ed.  The Court has some difficulty with the notion that growing plants could be considered "raw materials."  In common vernacular, producers of agricultural products do not typically refer to their growing plants as "raw materials," and Green Earth certainly has not pointed to notable examples of such a use of the language.  Green Earth points only to a single example of the phrase "raw materials" being used to refer to growing agricultural products:  the Merriam-Webster Dictionary (10th Ed.) uses the example "wheat . . . is raw material for the flour mill."  Atain points out, somewhat persuasively, that this sentence is probably referring to wheat that has been harvested and transported to the mill for processing, not a crop of wheat that remains growing in the field.

Neither party's argument does much to advance the analysis beyond this point. Neither party, for example, points to any discussions or correspondence between the parties about the scope of any insurance policy that would ultimately issue, nor do the parties point to other extrinsic evidence that would demonstrate that they shared some mutual understanding as to what might be covered by the term "Stock."[3]

Although the use of the term "raw material" to describe a growing agricultural product appears somewhat idiosyncratic, the Court is not prepared to say, particularly at the summary judgment stage, that it would require a construction of the Policy that excludes growing plants as a matter of law. A cursory internet search reveals occasional instances where authors have used the phrase "raw materials" in a context that could refer to growing plants.[4] Although these examples are infrequent and the term "raw materials" is used somewhat obliquely, the Court is satisfied that there is at least a colorable argument to be made that the term "raw materials" can sometimes include an agricultural producer's growing plants. This would permit a conclusion that the term "Stock" as used in the Atain Policy could cover Green Earth's growing plants.

---

[3] Rather, both parties focus their remaining arguments on certain deposition testimony by Shannon Anderson, Atain's Corporate Representative. This Court declines to speculate as to how Ms. Anderson's testimony should be construed because her testimony does not reflect a general legal meaning for the term "Stock" nor negotiations or a mutual understanding by the parties as to the meaning of the term.

[4] For example, the United Nations' Food and Agriculture Organization issued a 2001 report entitled "Principles and Practice of Small- and Medium-Scale Fruit Juice Processing." *See* ftp://ftp.fao.org/docrep/fao/004/y2515e/y2515e.pdf. Chapter 5 of that report is entitled "Raw Material for Juice" and discusses matters such as selection of fruit trees and cultivation practices to be used on growing fruit trees.

A 2015 student project, entitled "Commodity Chain Project – Wine," found on the Ohio State University's website uses the heading "Raw materials" above a section that discusses, among other things, the process of growing wine grapes. *See* https://u.osu.edu/wine/raw-materials/.

3. "growing crops"

This does not end the inquiry, however. Assuming that the Policy extends coverage to the mother plants and clones as "Stock," it nevertheless excludes coverage if the plants are "growing crops". Such exclusion is found in Paragraph A(1) of the Building and Personal Property Coverage Form, which states that "Covered Property means the type of property [covered by Paragraph] A.1" -- which includes the provision extending coverage to "Stock" – "and limited in [Paragraph] A.2, Property Not Covered." Paragraph A.2 operates to exclude any coverage for "Land (including land on which the property is located), water, growing crops or lawns." The question becomes whether Green Earth's plants constitute "growing crops."

The Oxford English Dictionary defines "crop," in this context, as "the yield or produce of some particular cereal or other plant in a single season or in a particular locality," "the whole of the plants which engage the agricultural industry of a particular district or season," (*i.e.* "this year's orange crop") or "the produce of the land, either while growing or when gathered; harvest" (*e.g.* "the farmer's corn crops were decimated by the hail"). *See also Merriam-Webster Dictionary*, 10th Ed. ("a plant . . . that can be grown and harvested extensively for profit or subsistence").

Green Earth argues that "crops," by definition, must grow in outdoor soil, and that plants raised indoors in containers – such as its mother plants and clones -- do not fit that definition. For the most part, the dictionary definitions of "crop" do not support this assertion - they make no particular distinction between plants grown indoors or outdoors. Although one of the Oxford English Dictionary's definitions does use the term "produce of the land," the Court understands that reference to be referring to plants generally, in the sense that plants rise out of soil (*i.e.* "the

land"), whether that soil is on the ground or in a pot.  In other words, the Court understands reference to "produce of the land" makes clear that a "crop of sheep" or other animals would be an incorrect usage, as the animals do not grow out from soil.

The Court sees nothing in the plain meaning of the word "crop" that would seem to differentiate between "crops" growing naturally in the solid earth and "crops" of plants growing in pots or otherwise in artificial conditions such as an indoor greenhouse.  Indeed, a search of Westlaw reveals many instances in which courts have casually used the term "crops" to  refer to plants growing in controlled indoor environments.  *See e.g. Coastal & Native Plant Specialties, Inc. v. Engineered Textile Products, Inc.*, 139 F.Supp.2d 1326, 1340 (N.D.Fl. 2001) ("These grants were in part used to construct and modify greenhouses and to hydroponically grow crops, such as onions"); *Avila v. Lin*, 2014 WL 6432279 (Ca.App. Nov. 17, 2014) ("Jiang destroyed two greenhouses before he realized there were growing crops within them."); *see also Stuart v. Haughton High School*, 614 So.2d 804, 805 (La. App. 1993) ("Mr. Stuart began growing tomatoes hydroponically in the controlled environment [of a hothouse] which allowed year-round tomato production . . .  a hole in the plastic sheeting could cause the loss of the entire tomato crop as the result of a sudden change in temperature"); *In re Sunnyland Farms, Inc.*, 517 B.R. 263, 265 (N.M. Bankr. 2014) ("The only grop ever produced in the [hydroponic greenhouse complex] was a crop of tomatoes produced in 2005.").  This is considerable evidence that the common use of the term "crops" does not distinguish between plants growing indoors and plants growing outdoors.

Interpreting "growing crops" as excluding coverage for Green Earth's mother and clone plants is also consistent with the parties' pre-Policy actions.  In April 2012, Atain issued a quote for insurance to Green Earth; among the terms of that quotation is a provision that reads

"Coverage does not extent to growing or standing plants."  The record suggests that Green Earth apparently accepted this offer, as the parties then entered into a "binder" – a temporary contract of insurance pending issuance of the formal Policy.  The binder also contained a provision reading that "Coverage does not extent to growing or standing plants."  Although the quote and binder are extrinsic to (and ultimately superseded by) the Policy itself, Colorado law permits the Court to consider extrinsic evidence for the purpose of ascertaining whether an ambiguity exists in the Policy language.  *Level 3*, 535 F.3d at 1155.  Here, these documents suggest that the parties have consistently understood that the ultimate Policy would not cover Green Earth's marijuana plants, and thus, construing "growing crops" to be ambiguous would inexplicably deviate from the parties' prior course of dealing.

Green Earth offers several arguments as to why the term "growing crops" should be found to be ambiguous, and further, why the Court should find that it does not extend to the plants themselves.  Only the first of these arguments directly engages the "growing crops" language in the Policy.  Green Earth argues that the "growing crops" exclusion should be construed according to the doctrine of *noscitur a sociis* ("it is known by its associates").  This doctrine suggests that the Court should "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words."  *Yates v. U.S.*, 135 S.Ct. 1074, 1084 (2015).  Green Earth argues that the phrase "growing crops" should be given a construction that shares a common character with the other terms --"land," "water," and "lawns" – used in that exclusion.  It argues that all three of these terms seem to be describing real property: the solid earth, bodies of water found on it, and outdoor areas of grass attached to the earth.  From this, Green Earth urges that the phrase "growing crops" should be limited to those crops that grow in and attached to the surface of the earth, not to crops that are grown in pots.

The Court is not persuaded that the other terms used in the Policy warrant the assumption that the term "growing crops" describes only plants growing outdoors, but more importantly, the Court rejects the argument because the doctrine of *noscitur a sociis* may not be used to create an ambiguity where one otherwise does not exist. *Dillabaugh v. Ellerton*, 259 P.3d 550, 554 (Colo.App. 2011). Finding that there is no inherent ambiguity in the phrase "growing crops," the Court declines to resort to *noscitur a sociis* to force a different conclusion.

Second, Green Earth argues that marijuana plants cannot be considered "crops," based on various definitions found in federal and state statutes. For example, it points to regulations implementing the Federal Crop Insurance Act, 40 C.F.R. § 180.1, and notes that those regulations do not enumerate marijuana among its "crop groups." It points to a March 25, 2015 notice from the Colorado Department of Agriculture, articulating that agency's "Policy regarding the criteria for pesticide use that would not be a violation of the label when used for the production of marijuana" in Colorado. The notice recites that the Department attempted to determine "which pesticides, if any, might be used legally on marijuana," because "pesticide labels will specify the particular crops . . . to which they can be applied." The Department consulted the various crop groups in that same federal regulation and, not surprisingly, concluded that "[n]owhere . . . is marijuana listed under any crop grouping." Green Earth also cites to the regulations of the Colorado Department of Revenue, pointing out that in various locations, these regulations dictate that growing plants "shall be considered plant inventory" or "shall be accounted for as inventory." From these, Green Earth argues that, legally, growing marijuana cannot be described as "crops." The Court rejects this argument entirely. The fact that various regulatory agencies might refer to marijuana plants as "inventory" for one purpose or decide that they do not fit within existing definitions of "crop groups" for another purpose is

irrelevant for the purpose of determining the parties' intentions as to how the particular language in <u>this</u> Policy should be construed. Neither the Policy nor the communications between the parties even remotely suggest that these references were pertinent to or considered by the parties at the time the policy terms were negotiated.

Green Earth's final, and most elaborate, argument is that it intended and expected that the Policy would cover the plants, and thus, the Policy should be construed to extend such coverage. This argument springs from a perfectly reasonable premise - Green Earth sought to insure its plants through the purchase of business insurance. From that, Green Earth points out that Colorado law adheres to the "reasonable expectations" doctrine: that courts will honor the reasonable expectations of an insured where circumstances attributable to an insurer have deceived a objectively reasonable insured into believing that it is entitled to coverage for a certain loss. *Bailey v. Lincoln General Ins. Co.*, 255 P.3d 1039, 1053 (Colo. 2011). But the reasonable expectations doctrine is not applicable here. The doctrine requires an insured to show "that its expectations of coverage are based on specific facts which make these expectations reasonable"; "bare allegations of Policyholders that they expected certain coverage" is not, of itself, sufficient. *Id.* at 1054. Green Earth offers nothing but a bare statement of its expectation that the Policy would cover its growing plants - the affidavit of Chris Fallis, one of its owners, states that "It was my understanding and my intention that the Policy of insurance provide coverage for the potted marijuana plants" and "It was absolutely not my intention to seek insurance coverage that excludes the very plants that are my business." Mr. Fallis' affidavit is notable for its carefully chosen language, as he does not assert that he expressed his intention to Atain, much less suggest that Atain understood and agreed to meet the expectation. To the contrary, the extrinsic evidence in the record indicates that Atain repeatedly, plainly, and

conspicuously advised Green Earth that growing plants would <u>not</u> be covered, and there is no evidence that Green Earth ever objected.

Finally, Green Earth offers an appeal to common sense: that there would be little point to it obtaining insurance if the insurance did not going to cover its plants.  This might be true if the Policy provided no benefit to Green Earth.   But the Policy is far from worthless to Green Earth even if it did not cover growing plants.  The Policy still insured Green Earth against general liabilities that could arise from operation of a commercial storefront and insured Green Earth against damage to non-plant business property, such as lighting systems, irrigation systems, ventilation systems, timers, computers and business machines, and so on.  In this sense, the scope of the intended coverage is somewhat reflected in the  questions and answers on Attain's "Medical Marijuana Dispensary Supplemental Application."  This supplemental application is a one-page form primarily focuses on operation of Green Earth's dispensary business: *e.g.* "Do you utilize security doors?," "Does the applicant have a weapon on premises?," "Do you utilize private security guards?," etc.  Only one question on the application even inquires about growing plants – "Do you grow Marijuana or other cannabis plants on the premises?" – and it does not ask for elaboration in the event of a "yes" answer.  If, as Green Earth argues, it would be common sense for an insurance Policy written for a marijuana business to cover growing plants, one would also assume that the insurer's marijuana-specific application form would make detailed inquires about the number, types, and values of the plants it was going to insure.[5]  The fact that Atain never sought details about Green Earth's grow operation further refutes any

_____

[5]     Green Earth's briefing makes certain representations about the nature and scope of Atain's pre-Policy inspections of Green Earth's premises and operations.  As best the Court can tell, those representations are not supported by citations to evidence of such inspections.

contention that Green Earth's expectations that the Policy would cover its growing plants was a reasonable one.

Accordingly,[6] the Court finds that the Policy's exclusion of coverage for "growing crops" unambiguously encompasses any body of plants tended for their agricultural yield, at least until they are harvested. This term clearly encompasses Green Earth's mother plants and clones.

This means that the only plants that are covered by the Policy are those that are "Stock", but not "growing crops." Thus, the Court finds that mother plants or clones are growing crops, and therefore are not covered by the Policy.

     5.  <u>"commencing"</u>

Green Earth's claim from the Waldo Canyon fire also includes a claim for coverage of approximately $ 40,000 worth of "finished product" – that is, harvested buds, flowers, and other plant material. Atain essentially concedes that this material falls within the grant of coverage for "Stock" and is not excluded by the "growing crops" exclusion.

However, Atain argues that Green Earth's loss "commenced" as early as June 26, 2012 prior to the Policy taking effect on June 29. It points to a Policy provision that provides that the Policy "cover[s] loss or damage *commencing* during the Policy period." Atain argues that the Court should construe the term "commencing," as meaning "beginning." Green Earth does not dispute this meaning, but argues that there is a disputed question of fact as to when its losses from the Waldo Canyon fire began.

Given that both Atain and Green Earth agree that the term "commencing," as used in the Policy, means "beginning," the Court declines to construe the term. The Court agrees that the

---

[6]    Green Earth raises several additional arguments, beyond those discussed here, in support of its contention that the "growing crops" exclusion should not apply. The Court has considered all of those arguments and finds them to be without merit.

parties' dispute is one of fact – when did Green Earth's losses actually begin to occur? Both parties have identified evidentiary support for their own answers to this question, and thus, a trial is required.

5. "Contraband"/public Policy

Finally, Atain argues that application of another exclusionary provision in the Policy excludes coverage for lost harvested buds and flowers. It invokes the exclusion of coverage for "Contraband, or property in the course of illegal transportation or trade" and argues that public policy requires that coverage be denied, even if the Policy would otherwise provide it.

The Policy does not define the term "Contraband," so the Court turns to the common and ordinary meaning of that term: "goods or merchandise whose importation, exportation, or possession is forbidden." Meriam-Webster Collegiate Dictionary (10th Ed.). The Court accepts Atain's observation that the possession of marijuana for distribution purposes continues to constitute a federal crime under 21 U.S.C. § 841(a)(1) and (b)(1)(D). But, as the parties are well-aware, the nominal federal prohibition against possession of marijuana conceals a far more nuanced (and perhaps even erratic) expression of federal Policy. The Court will not attempt to explain nor summarize, the conflicting signals that the federal government has given regarding marijuana regulation and enforcement since 2009.[7] It is sufficient to recognize that as early as

_____

[7]     The Court offers only selected citations, leaving the task of piecing together a clear federal position as an exercise for the reader. *See generally* Memorandum from Deputy Attorney General David W. Ogden, Oct. 19, 2009, *text at* http://tinyurl.com/nry8vtv; Memorandum from Deputy Attorney General James M. Cole, June 29, 2011, *text at* http://tinyurl.com/oqg2owq; Memorandum from Deputy Attorney General James M. Cole, Aug. 29, 2013, *text at* http://tinyurl.com/nrc9ur8 (collectively, reflecting Department of Justice's shifting priorities regarding enforcement of the Controlled Substances Act and expressing varying degrees of deference to states engaged in state regulation of marijuana); P.L. 113-235, § 538 (2014); P.L. 114-113, § 542 (2015) (collectively, denying budget funds to the U.S. Dept. of Justice for actions that would "prevent [specific] states from implementing their own State laws" regulating the cultivation and distribution of medical marijuana)*;U.S. v. Marin Alliance for Medical Marijuana*,

18

2009, and again mere weeks before Atain formally denied Green Earth's claim from the Waldo Canyon fire, federal authorities had made public statements that reflected an ambivalence towards enforcement of the Controlled Substances Act in circumstances where a person or entity's possession and distribution of marijuana was consistent with well-regulated state law. Other than pointing to federal criminal statutes, Attain offers no evidence that the application of existing federal public policy statements would be expected to result in criminal enforcement against Green Earth for possession or distribution of medical marijuana, nor does Atain assert that Green Earth's operations were somehow in violation of Colorado law. In short, the Policy's "Contraband" exclusion is rendered ambiguous by the difference between the federal government's *de jure* and *de facto* public policies regarding state-regulated medical marijuana.

With that ambiguity in mind, the Court turns to the parties' mutual intention regarding coverage of Green Earth's saleable marijuana inventory. Just as the extrinsic evidence strongly suggested that the parties intended to <u>exclude</u> coverage for growing plants, the same evidence strongly suggests that the parties mutually intended to <u>include</u> coverage for harvested plants constituting Green Earth's inventory. Atain's repeated pre-Policy statements that it was refusing to cover "growing plants" suggests, by negative implication, that it was willing to extend coverage to harvested plants and other inventory. Moreover, unlike its apparent disinterest regarding the scope and value of the grow operation, Atain's Medical Marijuana Dispensary Supplemental Application asks several questions about the amount and value of inventory that

---

2015 WL 6123062 (N.D.Ca. Oct. 19, 2015) (interpreting Congressional legislation cited above); Solicitor General's brief in *States of Nebraska and Oklahoma v. State of Colorado,* U.S. Sup. Ct. Docket No. 22O144 ORG*, text at http://tinyurl.com/hslwegl* (urging U.S. Supreme Court to not entertain a suit against Colorado by neighboring states, where the plaintiff states argued that the federal Controlled Substances Act precluded state regulation of marijuana pursuant to the Constitution's Supremacy Clause).

Green Earth keeps on its premises – *e.g.* "How much inventory is displayed to customers?" (with instructions to deny insurance if more than 25% is displayed); "How much [by value] of inventory do you keep on premises during non-business hours?"; "After business hours, is all inventory stored in a locked safe . . .?".  These questions indicate that some form of coverage of Green Earth's inventory was something contemplated by both parties.

More fundamentally, it is undisputed that, before entering into the contract of insurance, Atain knew that Green Earth was operating a medical marijuana business.  It is also undisputed that Atain knew – or very well should have known – that federal law nominally prohibited such a business.  Notwithstanding that knowledge, Atain nevertheless elected to issue a policy to Green Earth, and that policy unambiguously extended coverage for Green Earth's inventory of saleable marijuana. Nothing in the record ever indicates that Atain sought to disclaim coverage for Green Earth's inventory, much less that Atain ever informed Green Earth of its position that such inventory was not insurable.  In such circumstances, the Court finds that the record suggests that the parties shared a mutual intention that the Policy would insure Green Earths' marijuana inventory and that the "Contraband" exclusion would not apply to it.

Under these circumstances, the Court finds that the "Contraband" exclusion is ambiguous such that Atain is not entitled to summary judgment on Green Earth's claim for breach of contract arising from Atain's refusal to pay for harvested plants damaged by the Waldo Canyon fire.

This leaves Atain's "public Policy" requests.  Atain "asks for some direction and assurances from this Court" as to how it should proceed.  It "asks the Court to rule on" a specific question: "Whether, in light of [federal and state law], it is legal for Atain to pay for damage to

marijuana plants and products, and if so, whether the Court can order Atain to pay for these damages."

These requests present problems. First, the Court does not and cannot give "assurances" to a party about the legality of engaging in particular conduct, nor does the Court intend to offer any particular opinion as to "whether . . . it is legal for Atain to pay for damages to marijuana plants and products." The Court assumes that Atain obtained legal opinions and assurances on these points from its own counsel before ever embarking on the business of insuring medical marijuana operations.[8] Nor does the Court provide "direction" to parties as to how they should proceed. The Court's function here is purely adjudicatory – applying Colorado law.[9] Green Earth alleges that Atain made contractual promises, then breached them. With regard to such claim, the Court merely interprets and applies the terms of the Policy, and where there is a material factual dispute, directs that matter be set for trial. Any judgment issued by this Court

---

[8] As noted, before it ever entered into the Policy, Atain knew of the nature of Green Earth's business and the peculiar legal concerns attendant to doing business in this sphere. Atain chose to insure Green Earth's inventory, without taking any apparent precautions to carefully delineate what types of inventory would and would not be covered. Atain's newfound concerns that writing such a Policy might somehow be unlawful thus ring particularly hollow and its request for an advisory opinion appears somewhat disingenuous.

Indeed, were the Court to be compelled to find that Atain promises were void as against public Policy, the Court would be inclined to permit Green Earth to amend its pleadings to replace any claims sounding in breach of contract with a claim that Green Earth's payment of premiums for an illusory promise of insurance operated to unjustly enrich Atain. Moreover, given that Green Earth relied upon Atain's apparent promise of coverage by not seeking out alternative coverage, the Court would be inclined when exercising its equitable powers over such a claim to measure Green Earth's loss via expectation damages – that is, to award damages to Green Earth that would reflect what Green Earth would have expected to receive had Atain honored the coverage it promised. *See generally Lewis v. Lewis*, 189 P.3d 1134 (Colo. 2008) (appropriate measure of remedy in unjust enrichment context is left to the sound discretion of the court; affirming trial court's remedy that preserved the plaintiffs' expectations).

[9] Notwithstanding Atain's removal of this action from state to federal court, this Court exercises subject matter jurisdiction premised on diversity of citizenship, and thus applies state substantive law to the claims at issue here.

will be recompense to Green Earth based on Atain's failure to honor its contractual promises, not an instruction to Atain to "pay for damages to marijuana plants and products."

The unarticulated sub-text to this argument appears to be a request that the Court declare the Policy unenforceable as against public policy. Atain submits several cases in which courts have tried to reconcile federal and state law with regard to marijuana. Most of these cases are off-point, as they do not involve contractual claims in which both parties had a mutual intent to treat marijuana products as insurable commodities, only to have one party unilaterally seek to abandon that position later. Only *Tracy v. USAA Cas. Ins. Co.*, 2012 WL 928186 (D.Hi. Mar. 16, 2012), involves the question of whether an insurer is liable for breach for failing to pay an insurance claim for loss or damage to marijuana plants. There, the court found that an insured whose possession of marijuana plants was in conformance with state regulations had an insurable interest in those plants. The court ultimately concluded that the federal Controlled Substances Act nevertheless prevailed over state law, such that enforcing the terms of the insurance Policy "would be contrary to federal law and public Policy," and granted summary judgment to the insurer on the insured's breach of contract claim. *Id.*

For the reasons discussed above, and particularly in light of several additional years evidencing a continued erosion of any clear and consistent federal public policy in this area, this Court declines to follow *Tracy*. Accordingly, the Court declines Atain's indirect invitation to declare the Policy void on public policy grounds. Atain, having entered into the Policy of its own will, knowingly and intelligently, is obligated to comply with its terms or pay damages for having breached it.

Thus, the Court finds that Green Earth's breach of contract claim with regard to the approximately $ 40,000 claim made by Green Earth for damage to harvested marijuana buds and

flowers damaged in the Waldo Canyon fire must be tried.  Bcause Green Earth's claim that Atain breached the contract remains colorable, the Court denies Atain's motion for summary judgment on Green Earth's statutory claims for bad faith breach and unreasonable delay in payment relating to that portion of the Waldo Canyon claim.  Those claims shall proceed to trial as well.

### C.  Theft claim

This claim arises from an incident on June 7, 2013, in which thieves entered Green Earth's grow facility through a roof vent and stole various plants.  Green Earth made a claim on Atain for benefits under the Policy because of that incident.  Green Earth did not seek coverage for the stolen marijuana plants, but did assert that the thieves caused damage to the roof and ventilation system, and that those losses occasioned certain consequential losses in the form of damage to drywall and other interior contents of the building from water that came through the hole the thieves created in the building's roof.  Atain seeks summary judgment on Green Earth's claims arising out of this incident.

Atain first points to language in the Policy that excludes coverage for "loss or damage caused by or resulting from theft."  However, it concedes that this exclusion is in turn subject to certain limitations, most notably, that coverage <u>does</u> exist for "Building damage caused by the breaking in or exiting of burglars."  Atain argues that Green Earth cannot show that the building damage caused by the thieves was caused in the course of the thieves "breaking in or exiting" the building. It also makes an abbreviated argument that Green Earth cannot show that the amount of covered damage arising from the theft exceeds the Policy deductible of $ 2,500.

In response, Green Earth tenders the affidavit of Justin Flowers that unambiguously states that Green Earth (and not its landlord) was the owner of the ventilation system, and that he observed security camera footage showing the thieves entering the building through a hole they

created in that system. Green Earth also tenders the report of David Poynter, a contractor, who opines that the damage to the roof and duct work is approximately $ 8,000.

Atain does not meaningfully dispute these assertions in its reply, nor does it point to any contrary evidence as to causation. At most, it refers to remarks that its own adjuster valued the claim differently than did Mr. Poynter. Thus, there is a triable dispute as to whether the damage caused by this incident is covered by the Policy and whether the amount of that loss exceeds the Policy's deductible. Atain's motion seeking summary judgment on Green Earth's breach of contract claim as it relates to the theft claim is denied.

However, the Court finds it appropriate to grant summary judgment to Atain on Green Earth's bad faith breach of contract claim and unreasonable delay in payment claim as it relates to the theft claim. Both of these claims require a showing that the insurer acted "unreasonably" in denying the claim or refusing to pay benefits. To prove that an insurer acted unreasonably, an insured must come forward with evidence (typically from an expert) that the insurer's conduct violated industry standards, and the determination of reasonableness is an objective one. *Estate of Morris v. Copic Ins. Co.*, 192 P.3d 519, 524 (Colo.App. 2008). Here, Atain's original basis for denying the theft claim was that its adjuster valued the claim at approximately $ 2,400, below the Policy's $ 2,500 deductible. Green Earth certainly disagrees with Atain's adjuster's valuation, but Green Earth has not come forward with evidence to show that Atain's valuation was <u>objectively</u> unreasonable – it does not, for example, tender an expert who opines that no reasonable contractor or adjuster could believe that the identified damages could be fully repaired for as little as $ 2,400, or demonstrate that Atain's adjuster conspicuously overlooked substantial components of the claim that would have been covered.

Green Earth relies on Senior Judge Matsch's order denying summary judgment in *Jewkes v. USAA Cas. Ins. Co.*, D.C. Colo. Case No. 13-cv-01673-RPM (Jun. 26, 2014). There, Judge Matsch denied an insurer's motion for summary judgment on an insured's bad faith claim, explaining that "[t]o grant this motion this Court must find that an insurance company's reliance on expert reports is itself a sufficient showing of a reasonable basis for denial of benefits." *Id.* Judge Matsch went on to find that an adjuster's subjective evaluation of a claim is insufficient to establish reasonableness under the objective standard, and that "the veracity of the opinions expressed in . . . expert reports, the quality of the investigations done and the competence of the investigators are relevant issues [that] should be [decided] by a jury." *Id.*

This Court disagrees. Under Colorado law, the party asserting the bad faith claim has the burden of proof, and thus the burden of demonstrating the <u>un</u>reasonableness of the insurer's actions lies with the <u>insured</u>. *See Pham v. State Farm Mut. Automobile Ins. Co.*, 70 P.3d 567, 572 (Colo.App. 2003). Judge Matsch improperly placed the burden on the insurer to demonstrate that its position was reasonable as a matter of law, when the proper allocation of proof requires the insured to demonstrate that the insurer's position is unreasonable. It is not sufficient for an insured to simply tender a different valuation of a claim; indeed, were the Court to hold that a mere disagreement between parties as to the valuation of a claim created a triable bad faith claim, essentially <u>every</u> insurance dispute would proceed to trial on such a claim, as disputes between the insurer and insured over the proper valuation of the loss are routine.

Because Green Earth has not come forward with evidence to demonstrate that Atain's valuation of the losses covered under the theft claim was unreasonable, Atain is entitled to summary judgment on Green Earth's bad faith claims relating to the theft claim.

**CONCLUSION**

For the forgoing reasons, Atain's Motion for Summary Judgment (# 72) and "Motion to Determine Question of Law Regarding Application of Federal Law and Public Policy" (# 75), and Green Earth's Motion for Partial Summary Judgment (# 77) are each **GRANTED IN PART** and **DENIED IN PART** as follows: Atain is entitled to summary judgment on Green Earth's claims as they relate to damage to growing marijuana plants and Green Earth's claims for bad faith breach of contract or unreasonable delay in payment as they relate to Green Earth's insurance claim arising out of the June 2013 theft.[10]

Green Earth's breach of contract, bad faith, and delayed payment claims will proceed to trial with regard to Green Earth's claim for benefits arising out of damage to harvested marijuana buds and flowers allegedly caused by the Waldo Canyon fire, and Green Earth's claim for breach of contract only will proceed to trial with regard to Green Earth's claim for insurance benefits arising out of the June 2013 theft. Atain's "Motion to Determine Question of Law Regarding Legal Interpretation of Policy Provision" (# 74) is **DENIED.**

Although the Court would normally direct the parties to begin preparation of a Proposed Pretrial Order and schedule a Pretrial Conference at this point in the litigation, given the narrowing of the claims as set forth above, the Court instead finds it appropriate to set the matter for an Interim Case Management Conference pursuant to Fed. R. Civ. P. 16(c)(2). At that conference, the parties shall be prepared to enter into all appropriate factual stipulations so as to alleviate the need for evidentiary presentation of undisputed facts, to resolve any claims or portions of claims for which no further dispute exists, and to otherwise narrow and sharpen the

---

[10] No party has requested that the Court certify any partial judgment pursuant to Fed. R. Civ. P. 54(b), and the Court declines to do so. Judgment on these claims in favor of Atain shall enter at the conclusion of all remaining proceedings in this case.

case further before investing further time and resources into pretrial preparation. The Court will conduct this Interim Case Management Conference at **10:00 a.m.** on **May 10, 2016**.

Dated this 17th day of February, 2016.

**BY THE COURT:**

_____
Marcia S. Krieger
Chief United States District Judge